Receipt Number

556996

# UNITED STATES DISTRICT COURT

# FOR THE EASTERN DISTRICT OF MICHIGAN

## SOUTHERN DIVISION

HON. BEVERLEY NETTLES-NICKERSON,

      Plaintiff,

v.

PAUL J. FISCHER, in his official capacity
as Executive Director of the Michigan Judicial
Tenure Commission,

      Defendant.

**COMPLAINT**
CIVIL NO.

Case: 2:07-cv-11886
Assigned To: Borman, Paul D
Referral Judge: Majzoub, Mona K
Filed: 04-30-2007 At 12:34 PM
CMP NICKERSON V. MI JUDICIAL TENURE
COMMISSION, ET AL (TAM)

_____/

Dennis B. Dubuc (P67316)
Attorney for Plaintiff
Essex Park Law Office, P.C.
12618 10 Mile Rd
South Lyon, MI 48178
(248) 486-5508
_____/

## INTRODUCTORY STATEMENT

This lawsuit has been brought because certain state officials are seeking to punish
Plaintiff for exercising her protected First Amendment right to expose bias and racism by a
fellow Ingham County Circuit Court judge. The Plaintiff, Honorable Beverley Nettles-
Nickerson, a well respected African-American judge of 17 years, brings this action for
declaratory and injunctive relief against Defendant, Paul J. Fischer, the Executive Director of the
Michigan Judicial Tenure Commission (hereinafter "JTC"). Specifically, Plaintiff seeks (1) a
declaratory judgment that Defendant Fischer's pending JTC investigation has been initiated in

bad faith and to deter the exercise of First Amendment rights; (2) an injunction that will prohibit Defendant from further investigating Plaintiff on account of Plaintiff's openly and honestly held belief that Ingham County Circuit Judge William Collette has discriminated against Plaintiff on account of her race; and (3) an injunction that will prohibit Defendant from further chilling Plaintiff's protected First Amendment rights.

Plaintiff has been targeted because her complaints of racism have angered state officials within the judicial branch of government. Specifically, the ongoing JTC investigation was commenced as a result of a March 8, 2006 letter from Carl Gromek, Chief of Staff of the State Court Administrator's Office, and on Michigan Supreme Court letterhead, to the JTC. Mr. Gromeck's letter concludes by stating:

> As Judge Nettles-Nickerson drew a great deal of public attention to the race issue, I ask that you expedite your investigation to the extent possible.

Exhibit 1, March 8, 2006 letter from Carl Gromek

A person has a First Amendment right to complain about discrimination and bias within state government and she cannot be punished for exercising her right to do so. As described herein, Defendant is engaging in a bad faith investigation and harassment of Plaintiff, which was brought to teach Plaintiff a lesson: no judge may violate the code of silence and publicly expose bias within the Michigan judiciary. Bad faith and harassing state proceedings, such as Defendant's investigation of Plaintiff, encompass those proceedings that are initiated for or discourage the exercise of constitutional rights. Lewellen v. Raff, 843 F.2d 1103, 1109-1110 (8th Cir. 1988), cert. denied, 489 U.S. 1033; 103 L.Ed. 2d 229; 109 S.Ct. 1171 (1989). Further, a showing that a JTC investigation was brought in retaliation for or to discourage the exercise of federal constitutional rights "will justify an injunction regardless of whether valid convictions conceivably could be obtained." Fitzgerald v. Peek, 636 F.2d 943, 945 (5th Cir. 1981); Cullen v.

Fliegner, 18 F.3d 96, 103-104 (2nd Cir. 1994); Wilson v. Thompson, 593 F.2d 1375, 1383 (5th Cir. 1979); Rowe v. Griffin, 676 F.2d 524, 562, fn. 2 (11th Cir. 1982); Entergy Ark., Inc. v. Nebraska, 210 F.3d 887, 899 (8th Cir. 2000).

Plaintiff cannot receive a fair JTC process without federal intervention and the federal courts have an important substantive interest in protecting state court judges who expose bias within the state judiciary. Importantly, Defendant Fischer has stated, "We want her off the bench" at the onset of the JTC investigation, at a time when the JTC had not even considered Plaintiff's response to the JTC Grievance (Exhibit 2, Affidavit of Robert Palmer). As described herein, federal intervention is warranted because "The very purpose of § 1983 was to interpose the federal courts between the States and the people, as guardians of the people's federal rights -- to protect the people from unconstitutional action under color of state law, whether that action be executive, legislative, or judicial." Patsy v. Board of Regents of Florida, 457 U.S. 496, 503, 73 L. Ed. 2d 172, 102 S. Ct. 2557 (1982).

The conduct complained of herein, namely, retaliation for engaging in protected First Amendment activities, intimidation of witnesses interviewed by the JTC, and Defendant Fischer's improper threat that "We want her off the bench", warrants federal relief because it violates Plaintiff's rights as guaranteed to her under the First and Fourteenth Amendments to the Constitution of the United States. Plaintiff's protected rights are enforceable under the Civil Rights Act of 1871, as amended 42 U.S.C. §1983.

## JURISDICTION

1.     Plaintiff seeks to vindicate her rights protected by the First and Fourteenth Amendments to the Constitution of the United States and by 42 U.S.C. §1983. This court has jurisdiction of

this civil action pursuant to 28 U.S.C. §1331 and §1343(a)(3) and (4).  Plaintiff seeks declaratory

relief pursuant to 28 U.S.C. §2201 and §2202.

## VENUE

2.      Pursuant to 28 U.S.C. 1391(b), venue is proper in the United States District Court for the

Eastern District of Michigan.   Defendant Fischer and the JTC reside and operate within the

Eastern District of Michigan.

## PARTIES

3.      Plaintiff Honorable Beverley Nettles-Nickerson is a widely respected African-American

Ingham County Circuit Court judge.  Before being elected to the Ingham County Circuit Court,

Plaintiff was a district judge for Michigan's 54A District Court for 12 years.  In 2002, Plaintiff

was elected to the Circuit Court to serve a term beginning on January 1, 2003 and ending on

January 1, 2009.  She is presently assigned to the General Civil and Criminal Divisions of the

Court.

4.      Defendant Paul J. Fischer is the current Executive Director of the Michigan JTC.  The

JTC is an independent state administrative agency responsible for investigating complaints of

judicial misconduct and judicial incapacity, and for recommending discipline of judges by the

Michigan Supreme Court.   Its jurisdiction includes all active judicial officers, as that term is

defined in the Michigan Court Rules. The JTC's authority is limited to investigating alleged

judicial misconduct and, if warranted, recommending the imposition of discipline by the

Michigan Supreme Court. At all times relevant hereto, Defendant Fischer was acting under color

of state law.  Defendant Fischer is sued in his official capacity. Futernick v. Sumpter Twp., 78

F.3d 1051, 1055 n.5 (6th Cir. 1996) ("The directors of a state agency, no matter how far removed

4

from the actions of agency employees, are proper parties to a suit for an injunction under §
1983.")

## GENERAL ALLEGATIONS

Substance and Review of JTC Proceedings

5.     The JTC was established by an amendment to the Michigan Constitution by the people of
Michigan in 1968. The JTC's authority is set forth in Article 6, § 30 of the Michigan
Constitution. Chapter 9.200 of the Michigan Court Rules sets forth the procedures governing the
JTC, its investigations, and formal proceedings.

6.     Upon receipt of a grievance about a Michigan judge, the JTC's investigative staff reviews
the material and may request from the subject judge any additional information needed to
evaluate the grievance. Based on an assessment of the initial information, the staff prepares a
report for the JTC. Each grievance is voted upon by the JTC; following the staff investigation the
JTC determines whether the matter is within its jurisdiction and whether sufficient facts exist to
warrant further investigation.

7.     When the JTC determines that a complaint warrants review beyond the initial
investigation, the JTC directs the staff to investigate the matter and report back. The staff may
contact witnesses, review court records and other documents, observe courtroom proceedings,
and conduct such other inquiry as the staff sees fit.

8.     At times the judge may be asked to comment on the allegations, in which case the judge
is given a copy of the grievance as part of the investigation. The JTC may limit the inquiry to
the judge to a particular aspect of the grievance. The judge's response is then considered along
with all other information. A judge's comment is required under MCR 9.207(C) prior to the
disposition of a grievance in any way other than an outright dismissal under MCR 9.207(B)(1).

9.     The JTC may institute formal proceedings after the preliminary investigation is complete. Before issuing a formal complaint, the Commission must afford the judge notice of the charges. The judge then has 28 days to present, in writing, any matters the judge chooses for consideration by the JTC. MCR 9.207(C)(1).  When formal proceedings are instituted, the JTC issues a formal complaint, which constitutes a written statement of the charges.  The judge's answer to the notice of charges is filed with the JTC and served within 14 days after service of the notice.  MCR 9.209.

10.    The Commission may petition the Supreme Court for an interim order suspending a judge pending final adjudication of a formal complaint.  MCR 9.219.

11.    After the judge has filed an answer to the charges, the JTC sets the matter for a hearing. As an alternative to hearing the case itself, the JTC may request the Supreme Court to appoint a master to hear and take evidence in the matter and to report to the JTC.

12.    Following the hearing on the formal complaint, the master files a report with the JTC. The report includes a statement of the proceedings and the master's findings of fact and conclusions of law with respect to the issues presented by the formal complaint and the judge's answer.  Prior to a decision by the JTC, the parties are given the opportunity to present oral arguments before the JTC.

13.    If the JTC determines that misconduct has been established by a preponderance of the evidence, it may recommend that the Michigan Supreme Court impose discipline against the judge.  The JTC itself has no authority to discipline a judge; the Michigan Constitution reserves that role for the Supreme Court.  The JTC may recommend that the Court publicly censure a judge, impose a term of suspension, or retire or remove the judge from office.  The JTC issues a Decision and Recommendation, which triggers the next series of steps.

14.     Within 21 days after issuing its Decision and Recommendation, the JTC files the original record in the Supreme Court and serves a copy on the judge. Within 28 days after service, the judge may file a petition in the Supreme Court to modify or reject the JTC's Decision and Recommendation. The JTC has 21 days to respond with a brief of its own supporting its finding. Even if the judge does not file a petition, the Supreme Court reviews the JTC's Decision and Recommendation. After reviewing the record, the Court issues an opinion and judgment directing censure, removal, retirement, suspension, or other disciplinary action, or rejecting or modifying the JTC's Decision and Recommendation.

## ALLEGATIONS CONCERNING PLAINTIFF

15.     On January 18, 2006, respondent filed a civil rights complaint with the Michigan Civil Rights Commission, claiming that Ingham County Judge William E. Collette was discriminating against her because of her race.

16.     Plaintiff's civil right's complaint resulted in media attention by a multitude of Michigan news organizations. Because of this publicity, a number of Ingham County judges became concerned about the bad publicity created by this contentiousness and how that publicity affected the Ingham County Circuit Court. Thereafter, Plaintiff was visited by two of her colleges, Judges James Giddings and Paula Manderfield, who requested that Plaintiff withdraw her civil rights complaint, not because it lacked merit, but because of the effects it would have on the public's perception of the Ingham County judiciary. Respondent withdrew her civil rights complaint 8 days later at the request of her colleagues

17.     On March 8, 2006, Carl Gromek, Chief of Staff of the Michigan State Court Administrative Office, wrote to Defendant and requested that there be an investigation of Respondent's behavior and judgment concerning her filing of the civil rights complaint. Mr.

Gromek also made inference that Respondent's civil rights complaint, although withdrawn, was without merit and asked the JTC "to expedite" the requested investigation.   Mr. Gromek concluded: "As Judge Nettles-Nickerson drew a great deal of public attention to the race issue, I ask that you expedite your investigation to the extent possible."

18.     On November 8, 2006, Defendant notified Plaintiff that an investigation was under way, and he requested that Plaintiff respond to various questions.   Thereafter, on February 22, 2007 and March 14, 2007, Defendant amended and served additional allegations and interrogatories upon Plaintiff.

19.     The interrogatories served upon Plaintiff do not all relate to her civil rights complaint against Judge Collette.   In fact, Defendant buried the issue concerning Plaintiff's civil rights complaint within a number of unwarranted and frivolous allegations.   This was done as a subterfuge to conceal the true reason for Defendant's investigation.   For example, Defendant's February 22, 2007 correspondence stated:

> *The Michigan Judicial Tenure Commission ("Commission") has received certain information which, if true, indicates certain of your acts or omissions while a judge of the 30th Circuit Court or the 54A District Court in Lansing, Michigan, may constitute misconduct in office and conduct clearly prejudicial to the administration of justice as defined by Article 6, Section 30 of the Michigan Constitution of 1963, as amended, and MCR 9.205(B).*
>
> *The allegations against you include, but are not limited to, excessive absences from court, failure to properly maintain your docket, excessive pressuring of attorneys to resolve civil and criminal matters, ex parte communications, **systematically raising unwarranted charges of racism**, improper use of your judicial office to bring about early release of a probationer, fraudulently claiming residence to obtain a divorce in a county where neither you nor your husband*

8

*resided, and firing your judicial assistant because you believed she had acted as a whistleblower.* (emphasis added)

20.     The above allegations are meritless and they have been brought for one simple reason: Plaintiff caused an embarrassment to the Michigan judiciary by exposing racism within the Ingham County Circuit Court. It bears repeating that a JTC investigation brought in retaliation for or to discourage the exercise of federal constitutional rights should "justify an injunction regardless of whether valid convictions conceivably could be obtained." Fitzgerald v. Peek, 636 F.2d 943, 945 (5th Cir. 1981).

21.     During Defendant's investigation, he has demonstrated a troubling pattern of bad faith and harassing investigative tactics such as intimidation of witnesses that possess exculpatory information. For example,

    (1)     Defendant and/or his staff suggested to Respondent's ex-husband Daniel Nickerson that his job of 17 years as Administrative Law Judge might be in jeopardy due to his testimony which rebutted certain of Defendant's allegations concerning Respondent's recent divorce;

    (2)     Defendant's investigators visited twice to the home of Plaintiff's 80 year old mother-in-law, Ms. Stella Atkins, and implied to her that her exculpatory testimony might affect her federally subsidized housing benefits; and

    (3)     Defendant has stated "We want her off the bench", the pronoun "we" presumably referring to the JTC. This demonstrates how Plaintiff has been, and will continue to be, denied due process of law at the JTC stage of the investigation and recommendation process. A determination has already been made in Plaintiff's case, before Plaintiff was ever given a chance to defend herself.

## MICHIGAN SUPREME COURT INVOLVEMENT

22.    Plaintiff has also been the target of harassing and bad faith threats by the Chief Justice of the Michigan Supreme Court, Clifford Taylor.  For example, in June 2005, after Plaintiff very temporarily moved into a friend's home in Shiawassee County (until her apartment was ready for occupancy in Ingham County), Chief Justice Taylor (who has a home in the same Shiawassee County subdivision), noticed Plaintiff in the neighborhood.   Chief Justice Taylor walked over to Plaintiff's friend's home and told Plaintiff to leave the neighborhood, claiming that her temporary residence there violated her duty to reside in Ingham County.   Chief Justice Taylor told Plaintiff that if she did not immediately leave the neighborhood, he would institute proceedings to have her removed from the bench. Chief Justice Taylor also stated that he knew that the chances for success of such a proceeding would be slim, but the bad publicity for Plaintiff would injure her chances for reelection.  Chief Justice Taylor's conduct was harassing and it was in bad faith.  Ultimately on January 27, 2006 Justice Taylor, with approval of the court, directed that an investigation be conducted into the dispute that existed concerning court administration in Ingham County.  The only investigation that was conducted concerned Judge Nickerson's civil rights claim.

23.    A portion of Defendant's February 22, 2007 letter states that Plaintiff "fraudulently claim[ed] residence to obtain a divorce in a county where neither you nor your husband resided." This was based on a groundless falsehood as was the Chief Justice's harassing and bad faith behavior concerning respondent's temporary residence as noted in the paragraph above.

24.    Defendant's bad faith and harassing investigation of Plaintiff has had a chilling effect on her First Amendment right to expose racism and corruption within the Ingham County judiciary. Mr. Gromek's March 8, 2006 letter stating, *inter alia*, "As Judge Nettles-Nickerson drew a great

deal of public attention to the race issue, I ask that you expedite your investigation to the extent possible" (emphasis added), makes it abundantly clear that the publicity caused by Plaintiff's civil rights complaint is the true irritant that is fueling this investigation.  Mr. Gromek's letter which requested the current investigation is written on Michigan Supreme Court letterhead and upon information and belief, Mr. Gromeck was operating with at least the consent and advice of the Chief Justice of the Michigan Supreme Court, if not a majority of the Court.

25.     Investigating and harassing a person because she filed a civil rights complaint would chill a person of ordinary firmness from exercising her fundamental right to petition the government for redress of grievances.  The chilling effect caused by Defendant's conduct has chilled Plaintiff's rights and injunctive relief is necessary to enjoin Defendant, given that there is no adequate remedy at law.

26.     Ripeness and Standing.  It is well-settled that a chilling effect on one's constitutional rights constitutes a present injury in fact. G & V Lounge v. Michigan Liquor Control Comm'n, 23 F.3d 1071, 1076 (6th Cir. 1994); Levin v. Harleston, 966 F.2d 85, 89-90 (2d Cir. 1992) (holding that a merely implicit threat to fire a professor for his controversial views chilled professor's First Amendment rights sufficiently to confer standing); NAACP v. Button, 371 U.S. 415, 433, 9 L. Ed. 2d 405, 83 S. Ct. 328 (1963) ("The threat of sanctions may deter [the exercise of First Amendment freedoms] almost as potently as the actual application of sanctions.").  In light of the inordinate hardship to Plaintiff if federal adjudication is withheld, and given the relaxed ripeness and standing standards for challenges to First Amendment violations, Plaintiff has standing and this case is ripe for judicial review.

27.     Younger or Middlesex Abstention.  Abstention would be inappropriate because there are no ongoing state judicial proceedings at this time.  Administrative proceedings are "judicial in

nature" for abstention purposes only when they are coercive, Majors v. Engelbrecht, 149 F.3d 709, 712 (7th Cir. 1998), and the JTC proceedings do not become coercive until a formal complaint is served upon a judge.  Here, the only thing pending at this time is a bad faith JTC *investigation.*

## CONSTITUTIONAL CLAIMS

### – DECLARATORY AND INJUNCTIVE RELIEF - FIRST AND FOURTEENTH AMENDMENTS UNDER 42 U.S.C. §1983

### BAD FAITH

28.     By definition, bad faith and harassing state proceedings encompass those proceedings that are initiated for or discourage the exercise of constitutional rights. Lewellen v. Raff, 843 F.2d 1103, 1109-1 110 (8th Cir. 1988), cert. denied, 489 U.S. 1033; 103 L.Ed. 2d 229; 109 S.Ct. 1171 (1989).  Defendant's conduct is in bad faith and it is designed to discourage the exercise of constitutional rights. With respect to the interests of the JTC, it does not have any legitimate interest in investigating Plaintiff's openly and honestly held belief that racism and bias have been exhibited by Ingham County Judge William Collette.  Plaintiff has been exposed to acts of retaliation designed to deter the exercise of her federally secured freedoms. Wilson v. Thompson, 593 F.2d 1375, 1383 (5th Cir.1979).

### RETALIATION

29.     By filing a civil rights complaint against Judge William Collette, Plaintiff was engaged in a protected act.  The Supreme Court has described the right to petition government for redress of grievances as "among the most precious of the liberties safeguarded by the Bill of Rights." United Mine Workers v. Illinois State Bar Ass'n, 389 U.S. 217, 222, 19 L. Ed. 2d 426, 88 S. Ct. 353 (1967).   The right to initiate civil litigation (in the matter sub judice, a civil rights

complaint), is a First Amendment right, Bill Johnson's Restaurants, Inc. v N.R.L.B., 461 U.S. 731, 741; 103 S. Ct. 2161; 76 L. Ed. 2d 277 (1983), and the right to subject government action to constitutional scrutiny "implicates central First Amendment concerns." Legal Services Corp. v Velazquez, 531 U.S. 533, 547, 149 L. Ed. 2d 63, 121 S.Ct. 1043 (2001). Plaintiff cannot be retaliated against for her civil rights complaint against Judge William Collette.

29.     Because Defendant is using Plaintiff's decision to file a civil rights complaint against Judge William Collette as a basis to harass and investigate her, Defendant's practices also violate the rule of Perry v. Sindermann, 408 U.S. 593, 597; 33 L. Ed. 2d 570; 92 S. Ct. 2694 (1972). This is so because Plaintiff could never be disciplined for the exercise of such First Amendment rights. Perry states in relevant part:

> For at least a quarter-century, this Court has made clear that even though a person has no "right" to a valuable governmental benefit and even though the government may deny him the benefit for any number of reasons, there are some reasons upon which the government may not rely. It may not deny a benefit to a person on a basis that infringes his constitutionally protected interests -- especially, his interest in freedom of speech. For if the government could deny a benefit to a person because of his constitutionally protected speech or associations, his exercise of those freedoms would in effect be penalized and inhibited. This would allow the government to "produce a result which [it] could not command directly." Speiser v. Randall, 357 U.S. 513, 526. Such interference with constitutional rights is impermissible.

31.     Defendant's investigation of Plaintiff could never lead to any valid imposition of punishment because Plaintiff's public statements were openly and honestly held beliefs. This protection is compelled by "the constitutional shield [that protects] criticism of official conduct." New York Times Co. v. Sullivan, 376 U.S. 254, 273, 11 L. Ed. 2d 686, 84 S. Ct. 710 (1964). "It

13

is a prized American privilege to speak one's mind, although not always with perfect good taste, on all public institutions, and this opportunity is to be afforded for vigorous advocacy no less than abstract discussion." Id. at 269. In light of our "profound national commitment to the principle that debate on public issues shall be uninhibited, robust, and wide-open, and that it may well include vehement, caustic, and sometimes unpleasantly sharp attacks on government and public officials," Id. at 270, accordingly there is no valid basis for Defendant's investigation into Plaintiff's public statements and it should be enjoined.

32. Defendant's investigation is chilling Plaintiff's First Amendment rights to further complain about and expose racism exhibited by Judge Collette and those who support him. Any injury to First Amendment rights constitutes irreparable loss, thus entitling Plaintiff to injunctive relief. Elrod v Burns, 427 U.S. 347, 373, 96 S.Ct. 2673, 49 L.Ed. 2d 547 (1976). Without injunctive relief, Defendant will continue to harass Plaintiff and chill her First Amendment rights.

### CONCLUSION AND RELIEF SOUGHT

Plaintiff prays that this Court:

(1) issue a declaratory judgment that Defendant Fischer's pending JTC investigation has been initiated in bad faith and to deter the exercise of First Amendment rights;

(2) issue an injunction that will prohibit Defendant from further investigating Plaintiff on account of Plaintiff's openly and honestly held belief that Ingham County Circuit Judge William Collette has discriminated against Plaintiff on account of her race[1]; and

---

[1] To be clear, this lawsuit is not seeking to enjoin Defendant from investigating Plaintiff for any other reasons the JTC may see fit. This lawsuit has been brought to enjoin the investigation into Plaintiff's protected First Amendment activities, so that she may continue to expose Judge William Collette's racism without fear of further reprisal.

(3) issue an injunction that will prohibit Defendant from further chilling Plaintiff's

protected First Amendment rights.

Dated: April 27, 2007                                    Respectfully submitted:

                                                        Dennis B. Dubuc (P67316)
                                                        Attorney for Plaintiff
                                                        Essex Park Law Office, P.C.
                                                        12618 10 Mile Rd
                                                        South Lyon, MI  48178
                                                        (248) 486-5508


## VERIFICATION OF COMPLAINT

I verify under penalty of perjury that the foregoing is true and correct.

Executed on: April 27, 2007

                                                Hon. Beverley Nettles-Nickerson



**Michigan Supreme Court**
State Court Administrative Office
Michigan Hall of Justice
P.O. Box 30048
Lansing, Michigan 48909
Phone (517) 373-0130

Carl L. Gromek, Chief of Staff
State Court Administrator

March 8, 2006

Mr. Paul J. Fischer
Executive Director and General Counsel
Judicial Tenure Commission
Cadillac Place
3034 W. Grand Blvd., Ste. 8-450
Detroit, MI 48202

Dear Mr. Fischer:

On January 18, 2006, Judge Beverly Nettles-Nickerson filed a complaint with the Michigan Department of Civil Rights. In it, Judge Nettles-Nickerson claimed that Chief Judge William E. Collette subjected her to "discriminatory interference" and "undue scrutiny and oversight" because of her race. A week later, she withdrew the complaint.

In her Civil Rights complaint, and in related media coverage, Judge Nettles-Nickerson maintained that Chief Judge Collette's treatment of her was racially motivated. Chief Judge Collette maintained that his actions were not racially motivated and that he was responding to concerns about Judge Nettles-Nickerson's trial scheduling, work hours, and erratic behavior.

In a letter dated January 27, 2006, Chief Justice Clifford W. Taylor of the Michigan Supreme Court informed Chief Judge Collette and Judge Nettles-Nickerson that the Supreme Court had designated retired Judge Marvin Robertson to act as an informal fact finder. Over the weeks that followed, Judge Robertson interviewed both judges, as well as current members of the Ingham County bench. He interviewed numerous other witnesses, including retired judges and local attorneys. Because of witnesses' concerns about confidentiality, Judge Robertson reported only to the Justices of the Michigan Supreme Court and the State Court Administrator. Judge Robertson found no evidence of racism on Judge Collette's part.

RECEIVED

MAR 1 0 2006

Judicial Tenure Commission

**ATTACHMENT**

Date  March 8, 2006
Page 2

Although the allegation of racism has been disposed of, complaints exist about Judge Nettles-Nickerson's behavior and judgment.  Pursuant to MCR 8.113(B)(4), I request that you investigate this matter.  As Judge Nettles-Nickerson drew a great deal of public attention to the race issue, I ask that you expedite your investigation to the extent possible.

Sincerely,

Carl L. Gromek

cc:    Hon. Beverly Nettles-Nickerson

# AFFIDAVIT OF ROBERT W. PALMER

STATE OF MICHIGAN       }
                         } SS:

COUNTY OF OAKLAND    }

Robert W. Palmer, being first duly sworn, deposes and says:

1.     I am an attorney licensed to practice in the State of Michigan.

2.     I was retained by Beverly Nettles-Nickerson to defend her in conjunction with a request for investigation filed with the Judicial Tenure Commission by the State Court Administrator.

3.     In representing Judge Nettles-Nickerson, I contacted Paul Fischer, Executive Director and General Counsel of the Judicial Tenure Commission in an effort to have a general discussion regarding the seriousness of the request. After I indicated that I felt that the vast majority of the alleged concerns appeared to be relatively minor and further, that they did not appear to rise to the level of actionable misconduct, I was advised by Mr. Fischer, words to the effect that "We want her off the bench."

4.     The request for investigation was twenty-four pages, contained nineteen general concerns, and over fifty specific factual scenarios that the Commission wanted explained. In response thereto, I prepared a thirty-page document with over fifty attachments which addressed each of the factual scenarios with specificity.

5.     In responding to the Grievance, respondent offered to appear informally before the Grievance Commission, pursuant to MCR 9.207(C)(3) to offer further information and/or address the Commission's concerns.

6.     On or about February 22, 2007, counsel received another version of Grievance No. 06-16260. Said updated version, in essence, ignored the information previously provided and reiterated the vast majority of the accusations that were in the prior Grievance. The updated Grievance contained two new accusations and added the specific cannons allegedly violated with respect to each of the factual allegations. Other than those changes, the updated Grievance was essentially the same as the prior Grievance.

7.     Grievance No. 06-16260 and the updated Grievance of the same number contained an allegation that respondent's filing of a racial discrimination complaint with the Michigan Department of Civil Rights constituted judicial misconduct. Pursuant to MCLA § 37.2101 et seq, respondent has an absolute right to file a civil rights complaint when and if she has a good faith

belief that her civil rights in connection with her employment have been compromised.

Further, deponent saith not.

_____
Robert W. Palmer

On this 26th day of March 2007, before me, a Notary Public in and for said county appeared the above-named Robert W. Palmer, that he has read the foregoing Affidavit and that the same is true to the best of his knowledge, except as to those matters therein stated to be upon information and belief, and, as to those matters, he believes the same to be true.

Brigid A. Lossing , NOTARY PUBLIC
Washtenaw County, Michigan
My Commission Expires: 09/05/2007

JS 44 (Rev. 11/04) **CIVIL COVER SHEET** County in which this action arose   Wayne

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet.   (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

**I. (a) PLAINTIFFS**
Nickerson, Nettles, Beverley

**DEFENDANTS**
Michigan Judicial Tenure Commission,
Fischer, J. Paul, Executor Director

**(b)** County of Residence of First Listed Plaintiff
(EXCEPT IN U.S. PLAINTIFF CASES)

County of Residence of First Listed Defendant    Wayne
(IN U.S. PLAINTIFF CASES ONLY)
NOTE:  IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE
LAND INVOLVED.

**(c)** Attorney's (Firm Name, Address, and Telephone Number)
Dennis B. Dubuc
Essex Park Law Office,
12618 Ten Mile Rd., South Lyon, MI  48178    (248) 486-5508

Attorneys (If Known)

**II. BASIS OF JURISDICTION** (Select One Box Only)

☐ 1  U.S. Government
        Plaintiff

☐ 2  U.S. Government
        Defendant

☒ 3  Federal Question
        (U.S. Government Not a Party)

☐ 4  Diversity
        (Indicate Citizenship of Parties in Item III)

**III. CITIZENSHIP OF PRINCIPAL PARTIES** (Select One Box for Plaintiff
(For Diversity Cases Only)                            and One Box for Defendant)

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Cit | ☐ 2 | ☐ 2 | Incorporated and Principal Place | ☐ 5 | ☐ 5 |
| Ci |  |  |  | ☐ 6 | ☐ 6 |

Case: 2:07-cv-11886
Assigned To: Borman, Paul D
Referral Judge: Majzoub, Mona K
Filed: 04-30-2007 At 12:34 PM
CMP NICKERSON V. MI JUDICIAL TENURE
COMMISSION, ET AL (TAM)

**IV. NATURE OF SUIT** (Select One Box Only)

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 362 Personal Injury - Med. Malpractice | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 423 Withdrawal 28 USC 157 | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 365 Personal Injury - Product Liability | ☐ 630 Liquor Laws | | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 640 R.R. & Truck | **PROPERTY RIGHTS** | ☐ 450 Commerce |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability | | ☐ 650 Airline Regs. | ☐ 820 Copyrights | ☐ 460 Deportation |
| ☐ 151 Medicare Act | ☐ 340 Marine | **PERSONAL PROPERTY** | ☐ 660 Occupational Safety/Health | ☐ 830 Patent | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 152 Recovery of Defaulted Student Loans (Excl. Veterans) | ☐ 345 Marine Product Liability | ☐ 370 Other Fraud | ☐ 690 Other | ☐ 840 Trademark | ☐ 480 Consumer Credit |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 371 Truth in Lending | **LABOR** | **SOCIAL SECURITY** | ☐ 490 Cable/Sat TV |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle Product Liability | ☐ 380 Other Personal Property Damage | ☐ 710 Fair Labor Standards Act | ☐ 861 HIA (1395ff) | ☐ 810 Selective Service |
| ☐ 190 Other Contract | ☐ 360 Other Personal Injury | ☐ 385 Property Damage Product Liability | ☐ 720 Labor/Mgmt. Relations | ☐ 862 Black Lung (923) | ☐ 850 Securities/Commodities/ Exchange |
| ☐ 195 Contract Product Liability | | | ☐ 730 Labor/Mgmt.Reporting & Disclosure Act | ☐ 863 DIWC/DIWW (405(g)) | ☐ 875 Customer Challenge 12 USC 3410 |
| ☐ 196 Franchise | | | | ☐ 864 SSID Title XVI | ☐ 890 Other Statutory Actions |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 740 Railway Labor Act | ☐ 865 RSI (405(g)) | ☐ 891 Agricultural Acts |
| ☐ 210 Land Condemnation | ☐ 441 Voting | ☐ 510 Motions to Vacate Sentence | ☐ 790 Other Labor Litigation | **FEDERAL TAX SUITS** | ☐ 892 Economic Stabilization Act |
| ☐ 220 Foreclosure | ☐ 442 Employment | **Habeas Corpus:** | ☐ 791 Empl. Ret. Inc. Security Act | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 893 Environmental Matters |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/ Accommodations | ☐ 530 General | | ☐ 871 IRS  Third Party 26 USC 7609 | ☐ 894 Energy Allocation Act |
| ☐ 240 Torts to Land | ☐ 444 Welfare | ☐ 535 Death Penalty | | | ☐ 895 Freedom of Information Act |
| ☐ 245 Tort Product Liability | ☐ 445 Amer. w/Disabilities - Employment | ☐ 540 Mandamus & Other | | | ☐ 900 Appeal of Fee Determination Under Access to Justice |
| ☐ 290 All Other Real Property | ☐ 446 Amer. w/Disabilities - Other | ☐ 550 Civil Rights | | | ☐ 950 Constitutionality of State Statutes |
| | ☒ 440 Other Civil Rights | ☐ 555 Prison Condition | | | |

**V. ORIGIN** (Select One Box Only)

☒ 1  Original
        Proceeding

☐ 2  Removed from
        State Court

☐ 3  Remanded from
        Appellate Court

☐ 4  Reinstated or
        Reopened

☐ 5  Transferred from
        another district
        (specify)

☐ 6  Multidistrict
        Litigation

☐ 7  Appeal to District
        Judge from
        Magistrate
        Judgement

**VI. CAUSE OF ACTION**
Cite the U.S. Civil Statute under which you are filing (Do not cite jurisdictional statutes unless diversity):
42 U.S.C. sec. 1983
Brief description of cause:
Retaliation by State Officials due to Plaintiff's exercising first amendment rights

**VII. REQUESTED IN
COMPLAINT:**
☐ CHECK IF THIS IS A CLASS ACTION
        UNDER F.R.C.P. 23
DEMAND $
CHECK YES only if demanded in complaint:
JURY DEMAND:   ☐ Yes  ☒ No

**VIII. RELATED CASE(S)
IF ANY**
(See instructions):
JUDGE                                  DOCKET NUMBER

DATE
April 27, 2007

SIGNATURE OF ATTORNEY OF RECORD

**FOR OFFICE USE ONLY**

RECEIPT #          AMOUNT          APPLYING IFP          JUDGE          MAG. JUDGE

## PURSUANT TO LOCAL RULE 83.11

1.          Is this a case that has been previously dismissed?          ☐ Yes
                                                                          ☑ No

If yes, give the following information:

Court: _____

Case No.: _____

Judge: _____


2.          Other than stated above, are there any pending or previously
            discontinued or dismissed companion cases in this or any other          ☐ Yes
            court, including state court? (Companion cases are matters in which      ☑ No
            it appears substantially similar evidence will be offered or the same
            or related parties are present and the cases arise out of the same
            transaction or occurrence.)

If yes, give the following information:

Court: _____

Case No.: _____

Judge: _____


Notes :