UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

HON. BEVERLEY NETTLES-NICKERSON,          Case No. 2:07-cv-11886

     Plaintiff,          Hon. Paul D. Borman
v          Referral Judge Mona K. Majzoub

PAUL J. FISCHER, in his official capacity as
Executive Director of the Michigan Judicial Tenure
Commission,

     Defendant.
_____/

Dennis B. Dubuc (P67316)
Attorney for Plaintiff
Essex Park Law Office, P.C.
12618 10 Mile Road
South Lyon, MI  48178
248-486-5508

Brenda E. Turner  (P24705)
Michigan Department of Attorney General
Attorney for Defendant
P.O. Box 30736
Lansing, MI 48909-8236
517-335-3922
_____/

## DEFENDANT PAUL J. FISCHER'S MOTION TO DISMISS

### ORAL ARGUMENT REQUESTED

    Defendant Paul J. Fischer, in his official capacity as Executive Director of the Michigan

Judicial Tenure Commission, through his attorneys, files this Motion to Dismiss under FR Civ P

12(B)(1) and (B)(2), and states as follows:

    1.      Plaintiff has filed this Complaint against Defendant Fischer under the United

States Constitution and 42 USC § 1983.  She asserts that certain state officials seek to punish her

for exercising her First Amendment right to expose bias and racism by a fellow Ingham County Circuit Court Judge.

2.      Plaintiff seeks a declaratory judgment stating that Defendant's pending Judicial Tenure Commission investigation has been initiated in bad faith and to deter Plaintiff's exercise of First Amendment rights.

3.      Plaintiff seeks an injunction that will prohibit Defendant from further investigating Plaintiff.

4.      Plaintiff seeks an injunction that will prohibit Defendant from allegedly chilling her First Amendment rights.

5.      Plaintiff's entire Complaint should be dismissed with prejudice on the basis of the ripeness doctrine, Eleventh Amendment and/or quasi-judicial immunity, *Younger* or *Burford* abstention, and because it does not meet this Court's justifications for granting either declaratory or injunctive relief.

6.      For the reasons set forth in the accompanying brief, Plaintiff's entire Complaint should be dismissed with prejudice.

7.      On May 14, 2007, Defendant's attorney contacted Plaintiff's attorney by telephone in order to seek concurrence in this motion under ED Mich LCR 7.1(2). The attorneys held a conference in which the nature of the motion and the legal basis for the motion were explained. Plaintiff's attorney did not concur in the relief requested, necessitating this motion.

## RELIEF REQUESTED

WHEREFORE, for the reasons set forth in the accompanying brief, Defendant respectfully requests that this court dismiss Plaintiff's Complaint with prejudice.

## DEFENDANT'S BRIEF IN SUPPORT OF MOTION TO DISMISS

## STATEMENT OF ISSUES PRESENTED

I.     Statutes, rules, or policies whose effects have not yet been felt concretely are generally not ripe for review.  Here, Defendant as Executive Director of the Judicial Tenure Commission has not taken any action against Plaintiff as a result of the commission's legal duty to investigate complaints against the judiciary.  Is Plaintiff's claim ripe for review?

II.    The Sixth Circuit has held that even where the relief sought is prospective injunctive relief, Eleventh Amendment immunity must be examined on a case-by-case basis, and immunity should be granted where state sovereignty is at issue and the relief is the functional equivalent of a judgment paid out of the State treasury.  Quasi-judicial immunity is available where the plaintiff's actions are intimately related to the judicial process.  In this case, federal intervention into the State's regulation of its judiciary through the Judicial Tenure Commission implicates special sovereignty issues, and the commission's duty and power not only to investigate judges but also to file complaints against them, hold hearings, and make recommendations to the Michigan Supreme Court, are integrally intertwined with the judicial process.  Is plaintiff is entitled to Eleventh Amendment and/or quasi-judicial immunity?

III.   Abstention involves balancing federal jurisdiction with competing independent state actions.

    A.   *Younger* abstention is appropriate where there is an ongoing judicial proceeding, a strong state interest, and an adequate opportunity in the state proceeding to raise constitutional challenges.  An administrative proceeding is a judicial proceeding if it investigates, declares and enforces liabilities under existing laws, and as a result of its decision a "final act" is coercive rather than remedial.  Here, the Judicial Tenure Commission is not adopting or publishing administrative rules, but rather, investigating under existing rules with the possible outcome of filing a complaint against Plaintiff and conducting a hearing.  The state has a strong interest in ensuring the integrity of the judiciary, and state courts provide ample opportunity to challenge the constitutionality of Commission actions.

    B.   *Burford* abstention is appropriate where the exercise of federal review would be disruptive of state efforts to establish a coherent policy with respect to a matter of substantial public concern.  In this case, the integrity of the judicial system is a matter of substantial public concern, and federal review would disrupt the State's effort to exercise its constitutional duty to establish rules governing a Commission whose investigative and procedural powers insure an independent and honorable judiciary.  Should the federal court abstain from exercising its jurisdiction under either *Younger* or *Burford*?

IV.     Declaratory relief is discretionary, and federal courts consider a number of factors, including whether such relief would create friction between federal and state courts, and whether there is a more appropriate alternative remedy.  Here, federal intervention in the commission's ability to regulate the judiciary under Michigan Court Rules would create friction between federal and state courts, and the Michigan Supreme Court is the more appropriate forum for resolution of questions involving a Commission empowered by the Michigan Constitution to maintain judicial integrity.  Should the federal court exercise its discretion to deny declaratory relief?

V.      A party seeking injunctive relief bears a heavy burden of justifying this extraordinary and drastic remedy.  Plaintiff has demonstrated neither a substantial likelihood of success on the merits nor irreparable harm because the Commission has thus far only responded to its constitutional duty to investigate complaints against Plaintiff that it has not deemed unfounded or frivolous, and because the Judicial Tenure Commission has not yet filed a Complaint against Plaintiff.  Should this Court decline to issue the equitable remedy of injunctive relief?

## <u>CONTROLLING OR MOST APPROPRIATE AUTHORITY</u>

*CSXT, Inc v Pitz*, 883 F2d 468, 474 (CA 6, 1989)

*Detroit Newspaper Publishers Ass'n v Detroit Typographical Union No 18*, 471 F2d 872, 876 (CA 6, 1972)

*Eston v Van Bolt*, 728 F Supp 1336, 1339-1340 (ED Mich 1990)

*Forrester v Fitzsimmons*, 484 US 219, 229; 108 S Ct 538; 98 L Ed 2d 555 (1988)

*Grand Trunk Western RR Co v Consolidated Rail Corp*, 746 F2d 323, 326 (CA 6, 1984)

*Idaho v Coeur d'Alene Tribe*, 521 US 261; 117 S Ct 2028; 138 L Ed 2d 438 (1997)

*MacDonald v Village of Northport, Michigan*, 164 F3d 964, 971-972 (CA 6, 1999)

*Middlesex County Ethics Comm v Garden State Bar Ass'n*, 457 US 423, 432; 102 S Ct 2515; 73 L Ed 2d 116 (1982)

*New Orleans Public Service, Inc* (*NOPSI*) *v City of New Orleans*, 491 US 350; 109 S Ct 2506, 2519; 105 L Ed 2d 298 (1989)

*Younger v Harris*, 401 US 37, 91 S Ct 746 27; L Ed 2d 669 (1971)

## STATEMENT OF FACTS

Michigan's Judicial Tenure Commission (JTC) was established by the People of Michigan in 1968, by way of amendment to the Michigan Constitution in 1968.  The commission's role is "to preserve the integrity of the judicial system, to enhance public confidence in that system, and to protect the public, the courts, and the rights of the judges who are governed by these rules in the most expeditious manner that is practicable and fair."[1]  The JTC's powers emanate from the Michigan Constitution and the Michigan court rules, and its proceedings are governed by the Michigan court rules and subject to the superintending control of the Michigan Supreme Court.[2]  The JTC may adopt and publish administrative rules for its internal operation and administration of its proceedings, subject to approval by the Michigan Supreme Court.[3]

The Michigan Constitution provides that the Judicial Tenure Commission consists of nine persons.[4]  Some commissioners are selected by the judges, by a mail vote conducted by the state court administrator.  Others are selected by the members of the state bar, by a mail vote conducted by the State Bar of Michigan.[5]  Still others are appointed by the Governor.  A commissioner's term of office is three years, and commissioners serve staggered terms.[6]  Commissioners do not receive compensation for services, although they may be paid reasonable and necessary expenses.[7]

---

[1] MCR 9.200.
[2] Const 163, art 6, § 30; MCR 9.200 *et seq*; MCR 9.203(A) & (C).
[3] MCR 9.203(A).
[4] Const 1963, art 6, § 30; see also MCR 9.202(A).
[5] MCR 9.202(A).
[6] MCR 9.202(B).
[7] MCR 9.202(D).

Pursuant to its power, the JTC may respond to a written, verified request, a request from the state court administrator or the Attorney Grievance Commission, or may, on its own initiative, investigate a judge.[8]  After receiving a request for investigation that is clearly not unfounded or frivolous, the court rules mandate that the commission "direct that an investigation be conducted to determine whether a complaint should be filed and a hearing held."[9]

Before filing a complaint or taking action against a judge, the commission must give written notice to the judge who is the subject of the request for investigation.[10]  This notice affords the judge an opportunity to communicate with and provide information to the commission, including any information about the factual allegations and other relevant issues.[11] The judge may then also request to appear before the commission to present information.[12]  All judges, clerks, court employees, members of the bar, or other officers of the court must comply with any reasonable request made by the commission during its investigation.[13]  The JTC may require a judge to submit to a physical or mental examination.[14]

Once a preliminary examination is completed, the JTC may file a complaint upon concluding that there is sufficient evidence to do so.[15]  The commission must then set a time and place of hearing before the commission and notify the judge at least 21 days in advance, or request that the Michigan Supreme Court appoint a master to conduct the hearing.[16]  The public

---

[8] MCR 7.207.
[9] MCR 9.207(B).
[10] MCR 9.207(C).
[11] MCR 9.207(C).
[12] MCR 9.207(C).
[13] MCR 9.208(B).
[14] MCR 9.207(D).
[15] MCR 9.909(A).
[16] MCR 9.210(A) & (B).

hearing must conform as closely as possible to the rules governing circuit court civil trials.[17] Once the commission has entered an order recommending that the Michigan Supreme Court take action with regard to a judge, the judge may file a petition in the Michigan Supreme Court to reject or modify the commission's recommendation.[18]

On March 8, 2006, Carl Gromek, Chief of Staff of the Michigan State Court Administrative Office, wrote to the JTC's Executive Director, Defendant Paul J. Fischer, requesting an investigation of Plaintiff due to her filing—and later withdrawal—of a complaint with the Michigan Department of Civil rights against a fellow judge, Chief Judge William E. Collette.  The letter also references Judge Collette's concerns regarding Plaintiff's trial scheduling, work hours, and erratic behavior.  (Complaint, Gromek March 8, 2007 letter to Pl.) On February 22, 2007, after the JTC had determined that the request for investigation was not unfounded or frivolous, Defendant notified Plaintiff of the investigation by letter, citing various allegations regarding her conduct and judgment, including:  excessive absences from court, failure to properly maintain her docket, excessive pressuring of attorneys to resolve civil and criminal matters, ex parte communications, systematically raising unwarranted charges of racism, improper use of her judicial office to bring about early release of a probationer, fraudulently claiming residence to obtain a divorce in a county where neither she or her husband resided, and firing her judicial assistant in the belief that she acted as a whistleblower. (Complaint, Def's Feb 22, 2007 letter to Pl.)  Plaintiff filed the instant action during the pending investigation.

---

[17] MCR 9.211(a).
[18] MCR 9.224.

## STANDARD OF REVIEW

Motions to dismiss are governed by Rule 12(b) of Federal Rules of Civil Procedure.  Rule 12(b)(1) allows dismissal for lack of jurisdiction over the subject matter.[19]  Lack of subject matter jurisdiction may be asserted at any time, either in a pleading or in a motion.[20]  "Where subject matter jurisdiction is challenged pursuant to 12(b)(1), the plaintiff has the burden of providing jurisdiction in order to survive the motion."[21]

The Sixth Circuit Court of Appeals has determined that Eleventh Amendment immunity should be treated like personal jurisdiction.[22]  Consequently, Defendant move for dismissal of Plaintiff's Complaint under Rule 12(b)(2).  Granting a Motion to dismiss made pursuant to FR Civ P 12(b)(2) for lack of personal jurisdiction is "proper if all the specific facts which the plaintiff alleges collectively fail to state a *prima facie* case for jurisdiction."[23]

## ARGUMENT

**I.     Plaintiff's claim is not ripe for review because she has not shown a substantial likelihood that the Judicial Tenure Commission's investigation will lead to any action against her, and the State's compelling interest in regulating the integrity of its judiciary would be significantly impaired by the requested declaratory and injunctive relief.**

Unless a claim is ripe, the complaint should be dismissed for lack of subject matter jurisdiction under Rule 12(b)(1).  Ripeness requires the court to exercise its discretion and "determine if judicial resolution would be desirable under all of the circumstances."[24]  One of the basic rationales of the ripeness doctrine is " to protect the agencies from judicial interference

---

[19] FR Civ P 12(b)(1).

[20] FR Civ P 12(b)(1).

[21] *Michigan Southern RR Co v Branch & St Joseph Counties Rail Users Ass'n Inc*, 287 F3d 568, 573 (CA 6, 2002) (citing *Moir v Greater Cleveland Reg'l Transit Auth*, 895 F2d 266, 269 (CA 6, 1990)).

[22] *Ku v Tennessee*, 322 F3d 431, 432-35 (CA 6, 2003).

[23] *Compuserve, Inc v Patterson*, 89 F3d 1257, 1262 (CA 6, 1996).

[24] *Brown v Ferro Corp*, 763 F2d 798, 801 (CA 6, 1985), cert denied, 474 US 947 (1985).

4

until an administrative decision has been formalized and its effects felt in a concrete way by the challenging parties."[25]  The ripeness inquiry arises most clearly when litigants seek to enjoin the enforcement of statutes, regulations, or policies that have not yet been enforced against them.[26]

Here, Plaintiff cannot demonstrate that the JTC will take any action against her, either by filing a complaint or by recommending private censure against her.  Thus far, all the commission has done is to carry out its duty under the Michigan Constitution and the Michigan court rules to investigate allegations against Plaintiff that it has determined are not clearly frivolous or unfounded.[27]  The request for investigation was initiated by the state court administrator pursuant to Michigan court rules.[28]  The JTC is investigating a number of aspects of Plaintiff's behavior and judgment as a member of the judiciary, including excessive absences from court, failure to properly maintain her docket, excessive pressuring of attorneys to resolve civil and criminal matters, ex parte communications, raising unwarranted charges of racism, and fraudulently claiming to reside in particular county for purposes of her own divorce. (Complaint, p 8, quoting from Defendant's February 22, 2007 correspondence to Pl.)

In determining whether a pre-enforcement challenge is ripe, courts weigh three considerations.  The first two factors deal with the "fitness of the issues for judicial determination":  the extent to which the legal analysis would benefit from having a concrete factual context; and, the extent to which the enforcement authority's legal position is subject to

---

[25] *Ammex, Inc v Cox,* 351 F3d 697, 706 (CA 6, 2003) (citing *Abbott Labs v Gardner*, 387 US 136, 148-149; 87 S Ct 1507; 18 L Ed 2d 681(1967)).
[26] *Ammex,* 351 F3d at 706.
[27] MCR 9.207(B).
[28] MCR 8.113(B)(4).

change before enforcement.  The third deals with the "hardship to the parties of withholding court consideration."[29]

Together, these considerations weigh against ripeness in this case.  Without any recommendation by the JTC, Plaintiff has no framework for proving whether and to what extent she was injured and whether the JTC's recommendation was based on allegations that were frivolous and unfounded.  Also, at this point, the JTC has not necessarily developed a legal position with respect to Plaintiff, and its position could change as the investigation continues. Furthermore, Plaintiff would not be harmed if this Court dismisses this complaint.  Should the JTC file a formal complaint against Plaintiff, the Michigan Court Rules provide safeguards, including: (1) ample opportunity for a timely public hearing that conforms closely to the rules of procedure and evidence governing the trial of civil actions in the circuit court;[30] 2) the presence of at least five members of the commission at the hearing;[31] 3) the affirmative vote of at least five (5) commission members for any resulting action;[32] and, a timely opportunity to file in the Michigan Supreme Court a petition to reject or modify the commission's recommendation.[33]  In sum, the ripeness doctrine provides the appropriate analysis for determining that this case should not be heard at this time.

II.    **This Court should dismiss Plaintiff's claims on the basis of either *Younger* or *Burford* abstention.**

Abstention involves "careful consideration of the federal interests in retaining jurisdiction over the dispute and the competing concern for the 'independence of state action.'"[34]  Under the

---

[29] *Ammex*, 351 F3d at 706 (citing *Abbott Labs*, 387 US at 148-49).
[30] MCR 9.210(A); MCR 9.211(A).
[31] MCR 9.211(D).
[32] MCR 9.220(A).
[33] MCR 9.224(A).
[34] *Quackenbush v Allstate Ins Co*, 517 US 706, 728; 116 S Ct 1712; 135 L Ed 2d 1 (1996) (citing *Burford v Sun Oil Co*, 319 US 315, 334; 63 S Ct 1098; 87 L Ed 1424 (1943)).

facts of this case, this Court should abstain from exercising its jurisdiction because the case meets the requirements of both the *Younger* and *Burford* abstention doctrines.

      **A.**    ***Younger* abstention**

Abstention pursuant to the judicially-crafted rule announced in *Younger v Harris*,[35] is appropriate where a court can answer all three of the following questions in the affirmative: (1) whether the relevant state proceedings constitute an ongoing state judicial proceeding; (2) whether the proceedings implicate important state interests; and, (3) whether there is there an adequate opportunity in the state proceedings to raise constitutional challenges.[36] The United States Supreme Court has not limited the *Younger* abstention to state court proceedings. The Court also requires federal courts to abstain from interference in pending state administrative proceedings if they are "judicial in nature" rather than executive or legislative.[37] According to the United States Supreme Court, the following inquiries support abstention in matters involving administrative proceedings:  1) if the administrative proceedings are coercive rather than remedial; 2) if they began before any substantial advancement in the federal action took place; and, 3) if they involve an important state interest.[38]

      **i.**    **Ongoing state judicial proceeding**

The initial question here is whether JTC's investigation an ongoing state judicial

---

[35] *Younger v Harris*, 401 US 37, 91 S Ct 746 27; L Ed 2d 669 (1971).
[36] *CSXT, Inc v Pitz*, 883 F2d 468, 474 (CA 6, 1989) (citing *Middlesex County Ethics Comm v Garden State Bar Ass'n*, 457 US 423, 432; 102 S Ct 2515; 73 L Ed 2d 116 (1982)).
[37] *New Orleans Public Service, Inc* (*NOPSI*) *v City of New Orleans*, 491 US 350; 109 S Ct 2506, 2519; 105 L Ed 2d 298 (1989); *Middlesex*, 457 US at 423 (state bar disciplinary hearings qualify for *Younger* abstention); *Ohio Civil Rights Commission v Dayton Christian Schools, Inc*, 477 US 619; 106 S Ct 2718; 91 L Ed 2d 512 (1986) (hearing before state civil rights commission qualifies for *Younger* abstention).
[38] *Dayton Christian Schs*, 477 US at 627.

7

proceeding under *Middlesex County Ethics Committee v Garden State Bar Association*.[39]

Plaintiff argues that JTC's investigation does not constitute an ongoing state judicial proceeding

because Defendant has only investigated and has not filed a complaint.  (Complaint, ¶ 27.)  But

under the United States Supreme Court's analysis in *New Orleans Public Service, Inc v Council

of City of New Orleans* (*NOPSI*),[40] the JTC's investigation is clearly an ongoing state judicial

proceeding.  In *NOPSI,* the Court explained that an agency's proceeding will be characterized as

judicial or legislative depending on the "nature of the final act" which it is designed to produce.[41]

Where the proceeding investigates, declares and enforces liabilities as they stand "on present and

past facts and under laws supposed already to exist," it is judicial.[42]  In a number of cases, the

Sixth Circuit has held bodies whose functions and actions are similar to the JTC, to be judicial in

nature.[43]

---

[39] *Middlesex,* 457 US at 432.

[40] *NOPSI*, 491 US at 350.

[41] *CSXT, Inc,* 883 F2d at 474 (citing *NOPSI*, 491 US at 370-371) (quoting *Prentis v Atlantic Coast Line Co*, 211 US 210, 226-27; 29 S Ct 67; 53 L Ed 150 (1908) (Holmes, J.)); Cf *Patmon v Michigan Supreme Court*, 224 F3d 504, 509 (CA 6, 2000) (citing *Alia v Michigan Supreme Court*, 906 F2d 1100, 1102 (CA 6, 1990) ("The Michigan Supreme Court's promulgation of rules of practice and procedure is a legislative activity.").

[42] *CSXT,* 833 F2d at 474 (quoting *NOPSI*, 491 US at 372) (quoting *Prentis,* 211 US at 226)).

[43] See, e.g., *Fieger v Thomas*, 74 F3d 740, 744 (CA 6, 1996) (holding that the state attorney discipline board was performing an adjudicative rather than a legislative function because it was proceeding against Fieger to enforce its Rules of Professional Conduct, and therefore, satisfied the first requirement for *Younger* abstention); *Sun Refining & Marketing Co v Brennan*, 921 F2d 635, 640 (CA 6, 1990) (holding that an administrative proceeding where the Board of Building Appeals reviewed the decision of the Ohio Division of Boiler Inspection and determined that it had violated existing Ohio law, was judicial in nature); *Citizens for a Strong Ohio v Marsh*, No 04-3112, 123 Fed Appx 630, 634 (CA 6, 2005) (unpublished opinion) (concluding that proceedings before the Ohio Elections Commission ("OEC") were judicial in nature because "OEC hearings are initiated by a complaint, parties may present and cross-examine evidence, a decision or opinion is issued, and unsuccessful parties can appeal the OEC's decision); *BB & T Ins Servs v Ohio Dep't of Ins*, 2006 US Dist LEXIS 8374, at *12-13 (D Ohio, February 9, 2006) (holding that the Ohio Department of Insurance's investigation into whether Ohio law prohibited a seller of title insurance from being licensed as a business entity title insurance agent, was judicial in nature because the Department reviews the application, makes a preliminary

The instant case deals with an investigation that could lead to JTC's filing of a Complaint against Plaintiff. That no complaint has yet been filed makes no difference because, under the *NOPSI* analysis, a complaint and hearing would be the nature of the final act. This act is judicial in nature. Moreover, because the JTC is investigating Plaintiff based on present and past facts regarding a number of Plaintiff's actions pursuant to existing rules and procedures set forth by the Michigan court rules,[44] rather than exercising its authority to adopt and publish prospective administrative rules for its internal operation and the administration of its proceedings,[45] the JTC is performing a judicial rather than a legislative function. Accordingly, JTC's investigation is a state judicial proceeding. The second prong of the first requirement is also satisfied because the investigation is currently pending and was pending at the time this action was filed in federal court.[46]

### ii.    Important state interest

The integrity of the judiciary is an important state interest, as is the State's strong interest in regulation of its judiciary without federal intervention. Thus, the second requirement is met.

### iii.    Adequate opportunity to raise constitutional issues

The third requirement is also met. An "adequate opportunity" exists if the constitutional claims may be raised before state courts upon review of any administrative decision.[47] "When a litigant has not attempted to present his federal claims in related state-court proceedings, a federal court should assume that state procedures will afford an adequate remedy, in the absence

---

determination based on existing law (rather than creating new rules), and allows the applicant present evidence and witnesses at a hearing).
[44] MCR 9.207(B).
[45] See MCR 9.203(A).
[46] *Zalman v Armstrong*, 802 F2d 199, 204 (CA 6, 1986) (proper time of reference for determining *Younger* abstention is when the federal complaint is filed).
[47] *Dayton Christian Schls*, 477 US at 629.

of unambiguous authority to the contrary."[48]  Both the United States Supreme Court and the

Sixth Circuit have held that even where a state administrative agency has no power to hear a

constitutional claim, the requirement is met where state law provides for full judicial review of

agency proceedings.[49]

Here, the Michigan Court rules provide for timely review of a JTC recommendation by

the Michigan Supreme Court.[50]  Under the applicable court rule, that Court must review the

record of the proceeding and may file a written opinion and judgment accepting, rejecting, or

modifying the recommendations of the commission.  The Court may also remand the matter back

to the commission for further proceedings, findings, or explication.[51]  Plaintiff's allegations

about the purported bias of Michigan Supreme Court Justice Clifford Taylor, even if true, do not

demonstrate the Plaintiff would not receive full, adequate, and impartial review of a JTC

recommendation by the Michigan Supreme Court.

Thus, the instant case meets all three requirements for *Younger* abstention, and presents

no exceptional circumstances under which *Younger* would become inapplicable.[52]  JTC's

investigation was initiated pursuant to its constitutional duty and the mandatory language of

Michigan Court Rule 9.207:  "Upon receiving a request for investigation that is not clearly

---

[48] *Federal Express Corp v Tennessee Public Serv Com*, 925 F2d 962, 970 (CA 6, 1991) (citing *Pennzoil Co v Texaco, Inc*, 481 US 1, 15; 107 S Ct 1519; 95 L Ed 2d 1 (1987).
[49] See *Dayton Christian Schs*, 417 US at 629 ("[I]t is sufficient . . . that constitutional claims may be raised in state-court judicial review of the administrative proceedings."); *CSXT, Inc*, 883 F2d at 474 (citing *Michigan Gas Storage Co v Michigan Public Serv Comm'n*, 405 Mich 376; 275 NW2d 457 (1979) (reviewing preemption issues)); see also *Blue Cross and Blue Shield of Michigan v Baerwaldt*, 726 F2d 296, 300 (CA 6, 1984)).
[50] MCR 9.224(A).
[51] MCR 9.225.
[52] *Huffman v Pursue, Ltd*, 420 US 592, 603-613; 95 S Ct 1200; 43 L Ed 2d 482 (1975) (outlining the three exceptions to *Younger*:  whether the state proceeding is pursued with an intent to harass, is conducted in bad faith, or where the challenged state statute or authority is flagrantly and patently unconstitutional).

unfounded or frivolous, the commission <u>shall</u> direct that an investigation be conducted to determine whether a complaint should be filed and a hearing held."[53]  Plaintiff challenges neither the commission's inherent authority nor the constitutionality of the Michigan court rules governing the commission.  This scenario does, however, implicate the concern for comity that forms the underpinnings of the *Younger* doctrine, and, accordingly, this Court should abstain.

### B.    *Burford* abstention

The Supreme Court has explained that *Burford* abstention is appropriate where timely and adequate state-court review is available and (1) a case presents "difficult questions of state law bearing on policy problems of substantial public import whose importance transcends the result in the case then at bar," or (2) the "exercise of federal review of the question in a case and in similar cases would be disruptive of state efforts to establish a coherent policy with respect to a matter of substantial public concern."[54]

*Burford* abstention is appropriate here, where the requested relief is injunctive and declaratory,[55] and where federal interference would disrupt coordinated administration by the JTC.  The State of Michigan must be able to establish a coherent policy whereby the members of the state bar and the judiciary choose a body charged with investigating allegations against the judiciary.  As exhibited by the Constitutional mandate,[56] the extensive court rules governing the organization and powers of the JTC, and the judiciary's responsibility to comply with a

---

[53] MCR 9.207 (emphasis added).

[54] *NOPSI*, 491 US at 361 (quotation omitted); see also *Ada-Cascade Watch Co v Cascade Resource Recovery, Inc*, 720 F2d 897, 903 (CA 6, 1983) (stating that *Burford* enunciated two factors which justify abstention:  the presence of a complex state regulatory scheme which would be disrupted by federal review, or the existence of a state-created forum with specialized competence in the particular area).

[55] See *Quackenbush*, 517 US at 718-719.

[56] Mich Const 1963, art 6, § 30.

reasonable investigation by the JTC,[57] the State has already developed policies for regulating its judiciary.  Federal intervention jeopardizes the cohesiveness of those policies.  This Court should abstain under *Burford*.

**III.    Plaintiff is entitled to Eleventh Amendment and/or quasi-judicial immunity.**

      **A.    Eleventh Amendment Immunity**

Where there is no express waiver or Congressional abrogation, the Eleventh Amendment bars claims filed in federal court against a state and its agencies.[58]  The United States Supreme Court has expressly held that 42 USC § 1983 is not a Congressional waiver of jurisdictional immunity under the Eleventh Amendment.[59]  Further, it is long-settled that the State, its agencies and officials are not "persons" subject to 42 USC § 1983 liability.[60]  Lawsuits against state officials in their official capacity are deemed to be lawsuits against the State itself.[61]

The United States Supreme Court has recognized a narrow exception to this constitutional bar where a suit against state officers in their official capacities seeks only prospective injunctive relief.[62]  The Supreme Court has made clear, however, that *Ex parte Young* is no longer an automatic waiver of this constitutional bar.[63]  "[A]pplication of the *Young* exception must reflect a proper understanding of its role in our federal system and respect for state courts instead of a reflexive reliance on an obvious fiction," and must be interpreted consistently with the "real interests served by the Eleventh Amendment."[64]  Thus, *Idaho v Couer*

---

[57] See MCR 9.208(B).

[58] *Seminole Tribe of Florida v Florida*, 517 US 44, 73; 116 S Ct 114; 134 L Ed 2d 252 (1996).

[59] *Will v Michigan Dep't of State Police*, 491 US 58, 66; 109 S Ct 2304; 105 L Ed 2d 45 (1989).

[60] *Will*, 491 US at 71.

[61] *Will*, 491 US at 71.

[62] *Ex parte Young*, 209 US 123; 28 S Ct 441; 52 L Ed 714 (1908).

[63] *Idaho v Coeur d'Alene Tribe*, 521 US 261; 117 S Ct 2028; 138 L Ed 2d 438 (1997).

[64] *Coeur d'Alene*, 521 US at 270.

*d'Alene* requires a case-by-case balancing of the State's interests.[65]  In *Coeur d'Alene*, the Supreme Court recognized the need to examine and determine on a case-by-case basis whether vital state interests are at issue and implicated even where the claim is asserted against an individual official.[66]  In cases where such interests are involved, *Young* is not applicable and does not afford the federal courts jurisdiction to grant relief that would otherwise be barred by the Eleventh Amendment.[67]

Under *Cour d'Alene*, state officials should be afforded Eleventh Amendment immunity if a decision by the federal court "implicates special sovereignty interests" and if the requested relief is the "functional equivalent" of a form of legal relief against the State that would otherwise be barred by the Eleventh Amendment.[68]  The *Young* exception may serve an important purpose in two instances:  1) where there is no available state forum; and, 2) where the case calls for the interpretation of federal law.[69]  With regard to the second instance, the United States Supreme Court cautioned that it often leads to an improper "expansive application of the *Young* exception."[70]

The Sixth Circuit in *McDonald v Village of Northport*,[71] specifically held that "a sharply divided Supreme Court narrowed the scope of *Ex parte Young*[72] and that the *Coeur d'Alene* analysis is "now required."[73]  This Court, too, has relied on the *Coeur d' Alene* analysis in determining whether officers of the State Bar and members of the Board of Law Examiners are

---

[65] *Coeur d'Alene*, 521 US at 271-72.
[66] *Coeur d'Alene*, 532 US at 270-72.
[67] *Coeur d'Alene*, 521 US at 270.
[68] *MacDonald v Village of Northport, Michigan*, 164 F3d 964, 971-972 (CA 6, 1999) (quoting *ANR Pipeline Co v Lafaver*, 150 F3d 1178, 1190-94 (CA 10, 1998)).
[69] *Coeur d'Alene*, 521 US at 270.
[70] *Coeur d'Alene*, 521 US at 270.
[71] *MacDonald*, 164 F3d at 973.
[72] *MacDonald,* 164 F3d at 971, 973.
[73] *MacDonald*, 164 F3d at 971, 973.

13

entitled to Eleventh Amendment immunity in suits seeking prospective relief concerning admission to State Bar membership.[74]

While this case involves injunctive relief against a state judicial officer sued in his official capacity, it presents neither of the two instances in which the *Young* exception may serve an important purpose.  First, there is an available state forum for litigants who are dissatisfied with a decision made in connection with a JTC proceeding.  Secondly, while this case presents federal constitutional questions, they are within the capability of the state courts to resolve. Michigan State courts regularly interpret and apply federal law, and any constitutional issues decided in a Michigan State court would ultimately be subject to *certiorari* review by the United States Supreme Court.[75]  Moreover, the State Constitution has created and empowered the JTC and the State has a substantial sovereignty interest in regulating the conduct of its judiciary. Plaintiff has asked for a halt to an investigation that is mandated by the Michigan constitution and the Michigan court rules that govern the JTC's powers.

### B.        Quasi-judicial immunity

Quasi-judicial immunity extends to those persons performing tasks so integral or intertwined with the judicial process that these persons are considered to be figurative arms of the very commanding judge who is immune.[76]  In determining whether the specific actions of a government official are so integral to the judicial process to sound within the tradition of quasi-judicial immunity, the Supreme Court has articulated a "functional approach."[77]  This functional approach looks to "the nature of the function performed, not the identity of the actor who

---

[74] See *Kish v Michigan State Bd of Law Examiners*, 999 F Supp 958, 961-962 (ED Mich 1998).
[75] 28 USC § 1257.
[76] *Joseph v Patterson*, 795 F2d 549, 560 (CA 6, 1986), cert denied, 481 US 1023; 107 S Ct 1910; 95 L Ed 2d 516 (1987); *Johnson v Granholm*, 662 F2d 449, 450 (CA 6, 1981), cert denied, 457 US 1120l 102 S Ct 2933; 73 L Ed 2d 1332 (1982).
[77] *Forrester v Fitzsimmons*, 484 US 219, 229; 108 S Ct 538; 98 L Ed 2d 555 (1988).

performed it."[78]  Further, the functional approach "focuses on the conduct for which the immunity is claimed, not on the harm that the conduct may have caused or the question whether it was lawful."[79]  Whether particular officeholders have quasi-judicial absolute immunity for their acts depends on an analysis of the nature of the activities in which the officeholder engages and the relationship of those activities to the judicial process.[80]  Quasi-judicial immunity extends to those persons performing tasks so integral or intertwined with the judicial process that these persons are considered to be figurative arms of the very commanding judge who is immune.[81]

The doctrine of quasi-judicial immunity has been held to protect administrative, law enforcement, court and prison officials from 42 USC § 1983 liability.[82]  The Court has also extended the defense to state prosecutors and state parole officers when the functions they perform are judicial in nature.[83]  Similarly, attorneys on the State Bar Attorney Grievance Commission may be entitled to quasi-judicial immunity, depending on the duties they perform.[84] If the function is entirely investigatory or administrative in nature, the Sixth Circuit has held that

---

[78] *Forrester*, 484 US at 229.

[79] *Buckley v Rauch,* 509 US 259, 272; 113 S Ct 2606; 125 L Ed 2d 209 (1993).

[80] See *Shelton v Wallace*, 886 F Supp 1365, 1381-1388 (ND Ohio 1995) (citing *Foster v Walsh*, 864 F2d 416, 417 (1988)); *Sparks v Character and Fitness Committee,* 859 F2d 428 (CA 6, 1988) (appropriate inquiry is whether the function in question is a truly judicial act or an act that simply happens to have been done by judges), cert denied, 489 US 1011; 109 S Ct 1120; 103 L Ed 2d 183 (1989), and cert denied, 498 US 920; 111 S Ct 574; 112 L Ed 2d 250, reh'g denied, 498 US 1009; 111 S Ct 574; 112 L Ed 2d 580 (1990).

[81] *Bush*, 38 F3d at 847; *Joseph*, 795 F2d at 560; *Johnson*, 662 F2d at 450.

[82] See, e.g., *Shelton*, 886 F Supp at 1371 (citing *Scarso v Cuyahoga County Dep't of Human Services* (employees of the county department of human services and the juvenile court entitled to quasi-judicial immunity protection for carrying out a court order depriving plaintiff of physical possession of his child, because they were relying on a court order).

[83] See, e.g., *Imbler v Pachtman*, 424 US 409; 96 S Ct 984; 47 L Ed 2d 128 (1976).

[84] See *Doe v Atty Discipline Bd*, No 95-1259, WL 78312 (CA 6, February 22, 1996) (individual members of the Attorney Grievance Commission entitled to quasi-judicial immunity).

immunity does not attach.[85]  But, in contrast, this Court in *Eston v Van Bolt* granted absolute immunity to Attorney Grievance Commission members for investigating and subsequently deciding whether to prosecute a grievance, noting that any other result would inhibit the defendants' ability to adequately function.[86]  Likewise, the Sixth Circuit in *Balas v Leishman-Donaldson* held that when court personnel seek to investigate whether a defendant is complying with the terms of probation, at the direction of a judge, they are performing a judicial function.[87]

As in *Eston* and *Balas*, the JTC not only investigates but does so in order to decide whether it is necessary to file a complaint and conduct a hearing.  Furthermore, in determining whether the conduct of a member of the judiciary should lead to further proceeding and recommended action against a member of the judiciary, the JTC is functioning as an arm of the Michigan Supreme Court and is implementing Michigan Court rules governing the commission.[88]  Finally, as in *Eston*, any other result in this case would inhibit the JTC from performing its important function.

In determining whether actions are judicial in nature, both the United States Supreme Court and the Sixth Circuit have also looked to the level of independence of the individuals or board involved, to determine whether they possess the independence that characterizes judges;[89] to whether the potential for vexatious lawsuits is great; and to whether there are adequate

---

[85] See, e.g., *Achterhof v Selvaggio*, 886 F2d 826, 830 (CA 6, 1989) (immunity did not shield a state social worker from § 1983 liability when that individual initiated a child abuse investigation, even though the investigation might lead to criminal prosecution by another body, because the decision was <u>entirely</u> investigatory or administrative in nature).
[86] See *Eston v Van Bolt*, 728 F Supp 1336, 1339-1340 (ED Mich 1990).
[87] *Balas v Leishman-Donaldson*, No 91-4073, 1992 US App LEXIS 22411 (September 9, 1992) (unpublished).
[88] See MCR 9.205(A) & (B).
[89] *Cleavinger v Saxner*, 474 US 193; 106 S Ct 496; 88 L Ed 2d 507 (1985).

procedural safeguards.[90]  As the Supreme Court has recognized, "The immunity of participants in the judicial process stems not from the 'location' of the judicial process in one branch of government or another, but from the "characteristics" of the process.[91]  One of the characteristics of the judicial process is that the controversies with which the process deals are often "intense," and the loser, given an opportunity to do so, will frequently charge the participants in the process with unconstitutional animus, making "absolute immunity necessary to assure performance of the necessary task without harassment or intimidation."[92]

Here, the JTC consists of nine persons who serve staggered three-year terms and are selected through mail vote by state bar members and the very judges whom it oversees.  It also has the power to adopt and publish administrative rules for its internal operation, and is subject to restriction, control and review only by the Michigan Supreme Court.[93]  The JTC by court rule must also employ an executive director "to perform the duties that the commission directs."[94]  Its members, particularly the Executive Director, are subject to lawsuits from judges who are displeased with an investigation or the results of an investigation.  Without quasi-judicial immunity, the commission would be severely hampered in its ability and incentive to vigorously ensure the integrity of Michigan's judicial system.  Finally, are previously argued, the functions of the JTC have adequate procedural safeguards.

In short, the commission is judicial in nature and Defendant, its Executive Director, is therefore entitled to quasi-judicial immunity.

---

[90] See *Watts v Burkhart*, 978 F2d 269, 272 (CA 6, 1992) (citing *Butz v Economou*, 438 US 478, 5-6-508; 98 S Ct 2894; 57 L Ed 2d 895, (extending absolute immunity to non-judges for actions taken in suspending the plaintiff's business license).
[91] *Watts,* 978 F2d at 273 (citing *Butz*, 438 US at 512).
[92] *Watts,* 978 F2d at 273 (citing *Butz*, 438 US at 512).
[93] MCR 9.203(A) & (C).
[94] MCR. 9.202(G).

**IV.     Plaintiff's Complaint fails to meet the standard for issuance of declaratory relief.**

The Declaratory Judgment Act provides that in a case of actual controversy, a competent

court may "declare the rights and other legal relations" of a party "whether or not further relief is

or could be sought."[95]  It is well-settled that the granting of a declaratory judgment rests in the

sound discretion of the court and the court may refuse to hear such a claim.[96]  There are two

principal criteria used in determining whether a declaratory ruling is appropriate:  1) whether the

judgment will serve a useful purpose in clarifying and settling the legal relations in issue; and, 2)

when it will terminate and afford relief from the uncertainty, insecurity, and controversy giving

rise to the proceeding.[97]

The Sixth Circuit considers the following factors in determining whether it is appropriate

for a district court to issue a declaratory ruling:  (1) whether the declaratory action would settle

the controversy; (2) whether the declaratory action would serve a useful purpose in clarifying the

legal relations in issue; (3) whether the declaratory remedy is being used merely for the purpose

of "procedural fencing," (4) whether the use of a declaratory action would increase friction

between our federal and state courts and improperly encroach upon state jurisdiction; and, (5)

whether there is an alternative remedy which is better or more effective.[98]

Applying these factors here, this Court should use its discretion to deny declaratory relief.

Federal intervention in the State's investigation of its judiciary would not clarify legal relations in

this case because the JTC has yet to take action as to Plaintiff's conduct.  The requested

---

[95] 28 USC § 2201; *Public Service Comm'n of Utah v Wycoff*, 344 US 237, 241; 73 S Ct 236; 97 L
Ed 291 (1952).
[96] *Grand Trunk Western RR Co v Consolidated Rail Corp*, 746 F2d 323, 326 (CA 6, 1984)
(citing C. Wright, A. Miller & M. Kane, *Federal Practice and Procedure* § 2759 at 645 (1983)).
[97] *Grand Trunk*, 746 F2d at 326 (citing E. Borchard, DECLARATORY JUDGMENTS 299 (2d
ed 1941).
[98] *Grand Trunk*, 746 F2d at 326 (citing 6A Moore's Federal Practice para 57.08[2] at 57-37
(1983)).

declaratory and injunctive relief would also halt an investigation that the JTC must perform

under the Michigan court rules, thus creating friction between state and federal courts.

## V.   The extraordinary remedy of injunctive relief is not necessary under the circumstances.

As with all equitable remedies, a preliminary injunction will not issue unless the right to

relief is clear.[99]   A party seeking injunctive relief bears a heavy burden of establishing that the

extraordinary and drastic remedy sought is appropriate under the circumstances.[100]   In order to

issue an injunction, "[t]he right must be clear, the injury impending or threatened, so as to be

averted only by the protecting preventive process of injunction  . . . ."[101]

A plaintiff seeking a permanent injunction must satisfy the following four-factor test

before a court may grant such relief: (1) that it has suffered an irreparable injury; (2) that

remedies available at law, such as monetary damages, are inadequate to compensate for that

injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a

remedy in equity is warranted; and (4) that the public interest would not be disserved by a

permanent injunction.[102]

Plaintiff in this case does not meet three of the four factors.  She has not suffered an

irreparable injury since the investigation has thus far not led to the JTC's filing of a complaint

against her.  She has simply had to cooperate with the investigation, which she is required to do

under Michigan court rules.[103]   Moreover, during this investigatory process Plaintiff is protected

by the court rules, which do not allow either a commissioner or a member of the commission

---

[99] *Neveux v Webcraft Tech Inc*, 921 F Supp 1568, 1571 (ED MI 1996) (citing *Merrill Lynch, Pierce, Fenner & Smith Inc*, 836 F Supp 428, 431 (WD MI 1993)).

[100] See *Detroit Newspaper Publishers Ass'n v Detroit Typographical Union No 18*, 471 F2d 872, 876 (CA 6, 1972).

[101] *Detroit Newspaper Publishers*, 471 F2d at 876.

[102] *eBay Inc v MercExchange*, LLC, 126 S Ct 1837, 1839 (2006) (citing *Weinberger v Romero-Barcelo*, 456 US 305, 311-313; 102 S Ct 1798; 72 L Ed 2d 91 (1982)).

[103] See MCR 9.208(B).

staff to disclose the existence or contents of an investigation, testimony taken, or papers filed, except in furtherance of the investigation.[104]  Additionally, as Plaintiff is keenly aware, the JTC must have adequate grounds for action against her.[105]  If the JTC files a complaint, it will have to document how Plaintiff has violated the standards of judicial conduct, and Plaintiff will be given reasonable opportunity to respond and/or appeal.  It is hard to see how Plaintiff has been irreparably injured.  On balance, any minor hardship to Plaintiff based on this investigation pales in comparison to the hardship to the JTC in effectuating its duties, and the negative impact on the State if this court requires it to call off the investigation in which the commission is bound by constitution and rule to conduct.

## **CONCLUSION**

For the reasons set forth in this brief, Defendant Paul J. Fischer, in his official capacity as the Executive Director of the Michigan Judicial Tenure Commission, requests that this Honorable Court dismiss Plaintiff's Complaint with prejudice.

Respectfully submitted,

Michael A. Cox
Attorney General

*s/Brenda E. Turner*
Attorney for Defendant
Michigan Department of Attorney General
P.O. Box 30736
Lansing, MI 48909-8236
(517) 335-3922
Primary e-mail:  turnerbe@michigan.gov
(P24705)

Dated: May 14, 2007

---

[104] MCR 9.221(B).
[105] See MCR 9.205(B).

20

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on <u>May 14, 2007</u>, I electronically filed the foregoing paper with the Clerk of

the Court using the ECF system which will send notification of such filing of the following:

Defendant Paul J. Fischer's Motion to Dismiss.

> *s/Brenda E. Turner*
> Dept of Attorney General
> P.O. Box 30736
> Lansing, MI 48909-8236
> (517) 335-3922
> Primary e-mail:  turnerbe@michigan.gov
> (P24705)