UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

HON. BEVERLEY NETTLES-NICKERSON,   Case No. 2:07-cv-11886

    Plaintiff,   Hon. Paul D. Borman
v   Referral Judge Mona K. Majzoub

PAUL J. FISCHER, in his official capacity as
Executive Director of the Michigan Judicial Tenure
Commission,

    Defendant.
_____/

Dennis B. Dubuc (P67316)
Attorney for Plaintiff
Essex Park Law Office, P.C.
12618 10 Mile Road
South Lyon, MI  48178
248-486-5508

Brenda E. Turner  (P24705)
Michigan Department of Attorney General
Attorney for Defendant
P.O. Box 30736
Lansing, MI 48909-8236
517-335-3922
_____/

**DEFENDANT PAUL J. FISCHER'S REPLY TO
PLAINTIFF'S RESPONSE TO HIS MOTION TO DISMISS**

**STATEMENT OF FACTS**

Since Plaintiff Judge Nettles-Nickerson filed this action on April 27, 2007 asserting violation of her First Amendment right to expose bias and racism by a fellow Ingham County Circuit Judge, the Judicial Tenure Commission (JTC) has filed a Complaint and Petition for Interim Suspension against Plaintiff.  The Complaint filed on May 16, 2007 asserted multiple grounds of misconduct:

Count I:  Fraudulent claim of residency to obtain a divorce.

Count II:  Making false statements, soliciting false statements by others, and/or fabricating evidence.

Count III:  Coercing or pressuring court employees into listing cases on the No Progress Docket.

Count IV:  Excessive absences, belated commencement of proceedings, untimely adjournments and improper docket management.

Count V:  Improper *ex parte* communications.

Count VI:  Allowing social or other relationships to influence release of a criminal defendant from probation.

Count VII:  Attempted retaliation against the probation department and certain employees as a result of the Deshawn Anderson incident.

Count VIII:  Improper termination of judicial assistant Angela Morgan and cover-up of reasons for dismissal.

Count IX:  Incident at service station.

Count X:  Race and racism.

The Petition for Interim Suspension contained fourteen attachments in support of the allegations of Plaintiff misconduct including:

1. Complaint against Plaintiff by JTC.

2. Kent County Complaint for Divorce by Plaintiff.

3. Sworn Statement of Daniel Nickerson, Jr., ex-husband regarding residency.

4. Motion to Enter Judgment with sworn testimony by Plaintiff regarding divorce complaint allegations.

5. Affidavit of Genevieve A. Hamlin, official court reporter, regarding allegations of false statements.

6. Affidavit of William E. Collette, 30th Circuit Court Chief Judge, regarding allegations of a meeting with Plaintiff; racism and lying assertions by Plaintiff; and actions towards court reporter Dodie Dungey with attached memo regarding concerns with attendance and other issues.

7. Affidavit of James P. Hughes, Region II Administrator for the Michigan Supreme Court/State Court Administrative Office, regarding allegations of a meeting with Plaintiff and Judge Collette and a press conference related to termination claims regarding Dodie Dungey and complaints to the JTC.

8. Letter by Plaintiff dated February 6, 2007 to Attorney Greg Liepshutz relative to dismissal for lack of progress asserting non-action by any attorney.

9. No Progress Hearing transcript of September 8, 2005 showing appearance by Attorney Donald W. Busta, Jr.

10. Affidavit of Circuit Judge Joyce Draganchuk regarding Plaintiff's statements about JTC allegations and Judge Draganchuk's observations of Plaintiff.

11. Affidavit of Circuit Judge Laura Baird regarding Plaintiff's media contacts and Judge Baird's observations of Plaintiff.

12. Affidavit of Ann Marie Ward-Fuchs, former law clerk to Plaintiff, regarding race allegations.

13. Plaintiff press conference DVD.

14. Affidavit of Larry Theisen, 54A District Court Assistant Administrator, regarding Plaintiff's claims of racism.

The Petition for Interim Suspension was granted by the Michigan Supreme Court on June 6, 2007.

## ARGUMENT

**I.    The Judicial Tenure Commission's investigation has been completed and a Complaint issued.  Plaintiff's request to "issue an injunction that will prohibit Defendant from further investigating Plaintiff on account of Plaintiff's openly and honestly held belief that Ingham County Circuit Judge William Collette has discriminated against Plaintiff on account of her race" is moot.**

The Judicial Tenure Commission concluded that its investigations merited the issuance of a complaint against Plaintiff and filed a Complaint and Petition for Interim Suspension against Plaintiff on May 16, 2007.  Any request to enjoin investigations related to Plaintiff's claim of alleged racial bias by Judge Collette is moot.  Investigations have been completed and disciplinary proceedings are underway for multiple misconduct claims.

The forty-page JTC Complaint consists of ten counts.  Nine of the ten counts are unrelated to any claim of racial discrimination by Judge Collette.  Plaintiff's federal Complaint and prayer for relief make it clear that this lawsuit applies only to First Amendment speech related to allegations of racial discrimination by Judge Collette:

> Plaintiff prays that this Court:
>
> (1) issue a declaratory judgment that Defendant Fischer's pending JTC investigation has been initiated in bad faith and to deter the exercise of First Amendment rights;
> (2) issue an injunction that will prohibit Defendant from further investigating Plaintiff on account of Plaintiff's openly and honestly held belief that Ingham County Circuit Judge William Collette has discriminated against Plaintiff on account of her race;[1] and
> (3) issue an injunction that will prohibit Defendant from further chilling Plaintiff's protected First Amendment rights. Complaint, Conclusion and Relief Sought, pp 14-15.

---

[1] Plaintiff's footnote 1 states:  "*To be clear, this lawsuit is not seeking to enjoin Defendant from investigating Plaintiff for any other reasons the JTC may see fit.*  This lawsuit has been brought to enjoin the investigation into Plaintiff's protected First Amendment activities, so that she may continue to expose Judge William Collette's racism without fear of further reprisal."  (Emphasis added).

4

The JTC Complaint contained but one count (Count X) relating to race and racism involving Judge Collette. Allegations 89—104 related to Judge Collette while Allegations 105-106 related to "other spurious allegations or racial discrimination or racism" when Plaintiff was a member of the 54-A District Court. Complaint, Count X, pp 31-39.

The JTC Complaint and Petition for Interim Suspension detail multiple grounds for disciplinary action supported by sworn evidence demonstrating that the JTC allegations are neither frivolous nor unfounded. Contrary to Plaintiff's assertion, the varied, multiple instances of alleged misconduct clarify that the JTC Complaint does not seek to discipline Plaintiff for the act of filing a complaint alleging illegal discrimination by Judge Collette with the Michigan Civil Rights Commission and Department.

Plaintiff filed her JTC Answer to Complaint and Affirmative Defenses on May 30, 2007. In part, Plaintiff asserted that "The Complaint seeks to discipline Judge Nettles-Nickerson on the basis of her exercise of rights protected by the United States Constitution, Amend 1, i.e. in bringing charges of racism against the court and/or its employees." Answer to Complaint and Affirmative Defenses, Affirmative Defense 3, Formal Complaint No. 81.

Plaintiff now has available to her all the safeguards of the Michigan Court Rules, which include a public evidentiary hearing before at least five members of the Commission with at least five votes for any action against her and the right of appeal to the Michigan Supreme Court.[2]

---

[2] MCR 9. 9.210(A); MCR 9.211(A); MCR 9.211(D); MCR 9.220 (A); and MCR 9.224(A).

**II.     This Court should dismiss Plaintiff's remaining requests for relief seeking declaratory judgment "that the pending investigation has been initiated in bad faith and to deter the exercise of First Amendment rights" and seeking an injunction "that will prohibit Defendant from further chilling Plaintiff's protected First Amendment rights" on the basis of either *Younger*[3] or *Burford*[4] abstention.**

   **A.  *Younger* abstention**

Plaintiff argues this Court should exercise its discretion to adjudicate her First Amendment claim because this lawsuit followed a lengthy JTC investigation but preceded the filing of the JTC Complaint against her.  Plaintiff contends that the timing of the JTC charges amounts to a "manufacture [of] an ongoing state proceeding merely to support its claim to *Younger* abstention."  Plaintiff's Response to Defendant's Motion to Dismiss, p 13.  Without more Plaintiff asserts that the JTC state proceedings were harassing and brought in bad faith.  Plaintiff argues that if this Court were to abstain from adjudicating her First Amendment claim, this would be contrary to the federal court's duty to adjudicate claims within its jurisdiction and wrongly deprive Plaintiff of "the power to choose the forum."  Plaintiff's Response to Defendant's Motion to Dismiss, p 13.

The state JTC investigatory proceedings initiated by a March 8, 2006 request [5] have now proceeded to the charging and response stage.  Investigations by the JTC are state judicial proceedings.  See Defendant's Motion to Dismiss, pp 7-9.  Investigations were ongoing well before Plaintiff filed this Complaint in federal court in April 2007 and the subsequent issuance of the JTC Complaint in May 2007.

---

[3] *Younger v Harris*, 401 US 37; 91 S Ct 746; 27 L 3d 2d 669 (1971).
[4] *Burford v Sun Oil Co*, 319 US 315; 63 S Ct 1098; 87 L Ed 1424 (1943).
[5] Plaintiff has acknowledged this initiation of investigatory proceedings in Plaintiff's Response to Defendant's Motion to Dismiss, p 11.

A formal public evidentiary hearing will now follow in the state judicial proceedings with due process procedures and evidentiary rules akin to civil actions in circuit court.[6]  All these administrative stages are part of an ongoing state judicial proceeding dealing with the State's important interest in regulating its judiciary without federal intervention.

Plaintiff will have an opportunity in the adjudicative phase to litigate her asserted First Amendment defense.  And Plaintiff will have an opportunity for timely review by the Michigan Supreme Court if there is any adverse JTC recommendation.[7]  The United States Supreme Court tests for *Younger* abstention in administrative matters have been met.  See Defendant's Motion to Dismiss, pp 5-9.

To the extent that Plaintiff argues against *Younger* abstention based on the exceptions of harassment and bad faith those allegations have not been supported by any facts.  This Court should abstain.

### B. *Burford* abstention

Plaintiff also argues that this Court should exercise its discretion to adjudicate her First Amendment claims asserting there is no issue of state law or policy at issue as required for a *Burford* abstention.  Plaintiff contends that this lawsuit "merely calls into question whether particular instances of that administration [of public policy] violates federal constitutional limits."  Plaintiff's Response to Defendant's Motion to Dismiss, p 15.  It is Plaintiff's view that "[n]either Plaintiff's First nor Fourteenth Amendment claims involves a 'state-law claim'" and that this "federal action in no way implicates the state's ability to administer an important policy."  Plaintiff's Response to Defendant's Motion to Dismiss, pp 14 and 15.

---

[6] MCR 9.210(A); MCR 9.211(A).
[7] MCR 9.224(A).

7

Plaintiff focuses solely on her federal constitutional interests related to part of one count of ten.  But the JTC proceeding against her involves numerous allegations of misconduct and implicates important policies of the State in regulating its judiciary.  The Michigan constitutional mandate for judicial regulation is administered through an extensive set of rules and procedures whose cohesiveness would be disrupted by federal intervention. This Court should abstain under *Burford*.

### C.  The extraordinary remedy of injunctive relief is not necessary under the circumstances.

Plaintiff argues that this Court should issue injunctive relief because the parties have asked for adjudication of entitlement to such relief.  Relying on a press release by the Department of Civil Rights Plaintiff contends that she is likely to succeed on the merits because "Defendant's attempt to punish Plaintiff for filing a civil rights complaint against another judge would chill a person of ordinary firmness from filing a civil rights claim in the future." Plaintiff's Response to Defendant's Motion to Dismiss, p 17.  Plaintiff contends injunctive relief would cause no substantial harm to others "because the public has an interest in being protected from state actors who fail to abide by the U.S. Constitution."  Plaintiff's Response to Defendant's Motion to Dismiss, p 18.  And finally, Plaintiff argues there is a "significant public interest in upholding First Amendment principles."  Plaintiff's Response to Defendant's Motion to Dismiss, p 18.

Contrary to Plaintiff's assertion, Defendant does not ask this Court to adjudicate entitlement to injunctive relief.  Defendant urges this Court to abstain from exerting jurisdiction over Plaintiff's claims and dismiss this lawsuit.  But assuming *arguendo* that the Court exercises jurisdiction, Plaintiff's Complaint fails to meet the standard for issuance of declaratory relief and the extraordinary remedy of injunctive relief is not necessary under the circumstances.

8

Again, Plaintiff has focused solely on her First Amendment interests without regard to the hardship to the JTC in effectuating its duties and the negative impact on the State if this Court were to halt ongoing judicial disciplinary proceedings against Plaintiff. Plaintiff's request for an injunction against the JTC investigation regarding "First Amendment activities, so that she may continue to expose Judge William Collette's racism without fear of further reprisal" relates to only a part of one count of ten counts. Complaint, Conclusion and Relief Sought, (2), p 14, fn 1.

The state regulatory framework provides protections for Plaintiff including the JTC notice of charges by filing of a complaint, documentation of violations, and a reasonable opportunity to respond and/or appeal. Plaintiff's unsupported allegations of improper punitive motivation in investigating her conduct[8] and general assertions of the importance of First Amendment principles do not compel federal intervention.

---

[8] Plaintiff relies on the Civil Rights Department press release that notes "the legal right of Michigan residents and visitors to file complaints with the Michigan Department of Civil Rights is protected." "A suspension for filing an allegation of illegal discrimination would violate state and federal civil rights laws designed to protect those who stand up against discrimination from any acts of retaliation. Such a message from a legal authority would have a chilling effect on the state's ability to protect persons who legitimately believe they may be victims of illegal discrimination."

But the Civil Rights Department statement took "no position on the veracity of any fact claimed by any party" and asked the JTC to clarify that it was "not seeking to discipline Judge Nettles-Nickerson for the act of filing her complaint with the Michigan Civil Rights Commission and Department." The Complaint does not seek to discipline Plaintiff on that ground. See the forty-page JTC Complaint for the multiple and varied allegations of misconduct. The JTC complied with its constitutional mandate to investigate claims and based on its findings has now issued charges which will be adjudicated.

## CONCLUSION

For the reasons set forth in this brief, Defendant Paul J. Fischer, in his official capacity as the Executive Director of the Michigan Judicial Tenure Commission, requests that this Honorable Court dismiss Plaintiff's Complaint with prejudice.

|  |  |
|---|---|
|  | Respectfully submitted, |
|  | Michael A. Cox<br>Attorney General |
|  | *s/Brenda E. Turner*<br>Attorney for Defendant<br>Michigan Department of Attorney General<br>P.O. Box 30736<br>Lansing, MI 48909-8236 |
| Dated: June 8, 2007 | (517) 335-3922<br>Primary e-mail:  turnerbe@michigan.gov<br>(P24705) |

## CERTIFICATE OF SERVICE

I hereby certify that on June 8, 2007, I electronically filed the foregoing paper with the Clerk of the Court using the ECF system which will send notification of such filing of the following: Defendant Paul J. Fischer's Reply To Plaintiff's Response To His Motion To Dismiss.
.

> *s/Brenda E. Turner*
> Dept of Attorney General
> P.O. Box 30736
> Lansing, MI 48909-8236
> (517) 335-3922
> Primary e-mail:  turnerbe@michigan.gov
> (P24705)