UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

HON. BEVERLEY NETTLES-NICKERSON,

        Plaintiff,

                                            CASE NO. 07-CV-11886

-vs-

                                            PAUL D. BORMAN

PAUL FISCHER,                            UNITED STATES DISTRICT JUDGE
*in his official capacity as Executive Director*
*of the Michigan Judicial Tenure Committee*,

        Defendant.
_____/

## OPINION AND ORDER GRANTING DEFENDANT'S MOTION TO DISMISS

Now before the Court is Defendant Paul J. Fischer's ("Defendant") May 14, 2007 Motion to Dismiss pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(2). (Doc. No. 3). Plaintiff Beverley Nettles-Nickerson ("Plaintiff") filed her Response on May 31, 2007. Defendant filed a Supplement to his Motion to Dismiss on August 23, 2007. A motion hearing was held on January 23, 2008. For the following reasons, the Court **GRANTS** Defendant's motion.

**I.    BACKGROUND**

This case arises from Plaintiff's allegations that her First Amendment rights have been infringed. Plaintiff is an African-American Ingham County Circuit Court judge. (Compl. ¶ 3). Defendant Paul J. Fischer is the executive director of the Michigan Judicial Tenure Committee ("JTC"). (*Id.* ¶ 4). The JTC is an independent state administrative agency which is responsible for investigating complaints of judicial misconduct and incapacity and recommending discipline to the Michigan Supreme Court. (*Id.*). The JTC operates pursuant to the Michigan Court Rules. (*Id.*)

On January 18, 2006, Plaintiff filed a civil rights complaint with the Michigan Civil Rights Commission alleging that Ingham County Judge William E. Collette was discriminating against her

because of her race. (*Id.* ¶ 15). After her complaint received extensive media coverage, Plaintiff was visited by two of her colleagues. (*Id.* ¶ 16). These colleagues encouraged her to withdraw her complaint because of its possible negative effect on the public's perception of the judiciary. (*Id.*). Plaintiff withdrew her complaint eight days after it was filed. (*Id.*).

On March 8, 2006, Carl Gromek, the Chief of Staff of the Michigan State Court Administrative Office, wrote to the JTC requesting an investigation into Plaintiff regarding her behavior and judgment concerning her filing and withdrawal of the civil rights complaint. (*Id.* ¶ 17). The letter also raised concerns regarding Plaintiff's trial scheduling, work hours, and erratic behavior. (Compl. Ex. 1, Letter from Gromek).

On November 8, 2006, the JTC notified Plaintiff that it had launched an investigation into the allegations and requested that she respond to certain questions. (Compl. ¶ 18). On February 22, 2007, and March 14, 2007, Plaintiff was served with additional interrogatories. (*Id.*).

On April 30, 2007, Plaintiff filed the current action. (Doc. No. 1). Plaintiff seeks a declaratory judgment that the JTC investigation was initiated in bad faith and to deter the exercise of her First Amendment rights. (Compl. ¶ 14). Plaintiff alleges violations of 42 U.S.C. § 1983 for bad faith and retaliation. (*Id.* ¶¶ 28-29). Plaintiff also seeks an injunction prohibiting Defendant from further investigating Plaintiff regarding her filing of a civil rights complaint and also an injunction to prohibit Defendant from "further chilling Plaintiff's protected First Amendment rights." (*Id.*).

On May 16, 2007, the JTC filed a Complaint and Petition for Interim Suspension against Plaintiff in the state proceedings charging her with misconduct in office, including filing the aforementioned civil rights complaint. (Plf. Br. at 6). On June 2, 2007, the Michigan Supreme

2

Court granted the Petition for Interim Suspension. (Def. Supp. at 2).

## II. ANALYSIS

### A. Standard of Review

Under Fed. R. Civ. P. 12(b)(1), the party that invokes federal subject matter jurisdiction has the burden of persuading the Court that subject matter jurisdiction exists in this case. *Dismas Charities, Inc. v. U.S. Dep't of Justice*, 401 F.3d 666, 671 (6th Cir. 2005). The Court is empowered to resolve factual disputes when subject matter jurisdiction is challenged. *Moir v. Greater Cleveland Reg'l Transit Auth.*, 895 F.2d 266, 269 (6th Cir. 1990).

To avoid Rule 12(b)(2) dismissal where there has been no evidentiary hearing, a plaintiff need only present a *prima facie* case for jurisdiction. *Audi AG & Volkswagon of Amer. v. D'Amato*, 341 F. Supp. 734, 741 (E.D. Mich. 2004). Plaintiff has the burden of demonstrating personal jurisdiction over Defendants. *Neogen Corp. v. Neo Gen Screening, Inc.*, 282 F.3d 883, 887 (6th Cir. 2002). A court must consider all the affidavits and pleadings in a light most favorable to plaintiffs and does not weigh the controverting assertions of the party seeking dismissal. *Id.*

### B. Injunction

Plaintiff seeks an injunction from this Court to halt the JTC's investigation. The Court holds such a request moot, given the fact the investigation has ended and the JTC has initiated a complaint against Plaintiff.

### C. Abstention

Defendant contends the Court should abstain from the present action based upon the

Supreme Court decision in *Younger v. Harris*, 401 U.S. 37 (1971).[1] In *Younger*, as stated by the Sixth Circuit, the Supreme Court held "that a federal court should not interfere with a pending state criminal proceeding except in the rare situation where an injunction is necessary to prevent great and immediate irreparable injury." *Fieger v. Thomas*, 74 F.3d 740, 743 (6th Cir. 1996). The Supreme Court expanded the *Younger* doctrine to apply to state civil proceedings implicating important state interests. *See Moore v. Sims*, 442 U.S. 415, 423 (1979). The Supreme Court has also held that Federal courts should also abstain from interfering with state administrative proceedings if those proceedings are "judicial in nature," rather than legislative or executive. *Ohio Civil Rights Comm'n v. Dayton Christian Sch., Inc.*, 477 U.S. 619, 627 (1986). "*Younger* abstention is not a question of jurisdiction, but is rather based on 'strong policies counseling against the exercise of such jurisdiction.'" *O'Neill v. Coughlan*, 511 F.3d 636, 2008 WL 80553, *2 (6th Cir. Jan. 9, 2008) (quoting *Dayton Christian Sch.*, 477 U.S. at 627). "[I]t is clear that the mere assertion of a substantial constitutional challenge to state action will not alone compel the exercise of federal jurisdiction." *New Orleans Pub. Serv. Inc. v. Council of New Orleans* ("*NOPSI*"), 491 U.S. 350, 365 (1989) (hereinafter "*NOPSI*").

In a recent decision, the Sixth Circuit set forth the three prerequisites to abstention which must be met to abstain under the *Younger* doctrine:

> *Younger* abstention requires federal court to abstain from granting injunctive or declaratory relief that would interfere with pending state judicial proceedings. We look to three factors to determine whether a court should abstain . . . . "(1) there must be on-going state judicial proceedings; (2) those proceedings must implicate important state interests; and (3) there must be an adequate opportunity in the state proceedings to raise constitutional challenges."

---

[1] As the Court finds *Younger* abstention applies, it declines to address Defendant's alternative reasons to dismiss.

*O'Neill*, 2008 WL 80553, *4 (internal citations omitted); *Middlesex County Ethics Comm. v. Garden State Bar Ass'n*, 457 U.S. 423, 432 (1982) (setting forth three factor test). "If these prerequisites are satisfied and 'so long as there is no showing of bad faith, harassment, or some other extraordinary circumstance that would make abstention inappropriate, the federal courts should abstain.'" *Amer. Family Prepaid Legal Corp., Columbus Bar Ass'n*, 498 F.3d 328, 332 (6th Cir. 2007) (citation omitted).

### 1. On-going State Judicial Proceedings

There is no dispute that the JTC's investigation into the grievance, which was on-going for approximately 14 months before the formal complaint was returned, constitutes an on-going state judicial proceedings under the *Younger* analysis.

In *O'Neill* the Sixth Circuit Court overturned a district court decision that failed to apply *Younger* abstention regarding state proceedings involving an Ohio state court judge who sought to enjoin the Disciplinary Counsel for the Supreme Court of Ohio from enforcing the Ohio Code of Judicial Conduct against him. The Sixth Circuit held that the "filing of a grievance constituted the beginning of the judicial process." *Id.* at *5. In light of this recent decision, Plaintiff's counsel conceded during the instant motion hearing that the investigation by the Michigan JTC constituted an "on-going" proceeding. Therefore, the investigation of Plaintiff constituted on-going proceedings of a judicial nature at the time Plaintiff filed her federal complaint.

### 2. Important State Interests

Plaintiff does not dispute in her response that the JTC proceedings, including the investigation, involve important state interests. Further, the Supreme Court has addressed the *Younger* abstention doctrine in the context of state disciplinary proceedings stating that "the

5

importance of the state interest in the pending state judicial proceedings and in the federal case calls *Younger* abstention into play." *Middlesex*, 457 U.S. at 423. Therefore, it is clear that the JTC proceedings, including the investigation, implicate the important state interest of regulating judicial integrity without federal intervention or interruption.

### 3. An Adequate Opportunity to Raise Constitutional Challenges

The final requirement is that there must be "an adequate opportunity in the state proceedings to raise constitutional challenges." *Middlesex*, 457 U.S. at 432. The federal plaintiff bears the burden in showing "that state procedural law barred presentation of [its] claims." *Pennzoil Co. v. Texaco, Inc.*, 481 U.S. 1, 14 (1987) (citation omitted). The Supreme Court has made clear that "a federal court should abstain unless the state law <u>clearly bars</u> the interposition of the constitutional claims." *Middlesex*, 457 U.S. at 432 (citation and quotation omitted) (emphasis added).

In the present case, Plaintiff did initially assert her constitutional claims in defense of the now pending state complaint. Indeed, Defendant has provided the Court with evidence of Plaintiff's attempt to retract her constitutional claims in the on-going state proceedings. (Def. Supp. Br. Ex. A, Examiner's Brief in Support of Answer in Response to Respondent; Ex. B, Opinion and Order Denying Respondent's Motion to Amend Answer; Ex. C, Plaintiff's Answer to the Complaint including Affirmative Defenses). The JTC rejected Plaintiff's motion to amend her answer to retract these claims, holding that to allow Plaintiff to strike her federal constitutional claims would prejudice the examiner by forcing them to litigate the same issue in federal court. (Ex. B).

During the motion hearing, Plaintiff contended that her counsel in the state proceeding, Philip J. Thomas, attempted to raise federal constitutional issues during the JTC hearing but was

prohibited from doing so.² Plaintiff now clarifies:

> Philip Thomas did not assert that he would not argue constitutional claims in the state court proceedings. Mr. Thomas asserted that he would not argue <u>Federal</u> Constitutional Claims in the JTC State proceedings concerning Judge Nickerson. His initial assertion was that any constitutional claims he makes would be under state constitutional rights. This was done to avoid any Rooker Feldman problems at a later date. However, Mr. Thomas was not permitted to argue any constitutional claims in the sate proceedings.

(Plf. Supp. at 1-2) (emphasis in original).

In the present action, Plaintiff asserted her federal constitutional claims as affirmative defenses to the state complaint. Plaintiff then attempted to retract those federal constitutional claims in the state proceedings, but was unsuccessful. Plaintiff's counsel for the state proceedings then voluntarily did not assert those federal constitutional claims during the state hearing. Therefore, Plaintiff has strategically attempted to forego her federal constitutional challenges during the state court proceeding and was not frustrated or barred from raising these claims.

In *Middlesex*, the Supreme Court held that where a plaintiff did not attempt to raise the federal constitutional challenges in the state proceedings, he could not argue he had been denied "an adequate opportunity in the state proceedings to raise constitutional challenges." 457 U.S. at 429, 432; *accord Fieger*, 74 F.3d at 748. As Plaintiff clearly <u>chose</u> to abandon any federal constitutional claims in the state proceeding, she cannot not argue that she was denied the right.

Therefore, the Court holds that Plaintiff has failed to carry her burden in showing that "state law clearly bars" the assertion of her constitutional challenges.

### 4. Exceptions to Younger Abstention

---

² The Court recognizes Plaintiff did not make any argument in her briefing as to this prong of the *Younger* abstention doctrine.

There are certain exceptions to *Younger* abstention, including "bad faith, harassment, or flagrant unconstitutionality." *Squire v. Coughlan*, 469 F.3d 551, 557 (6th Cir. 2006) (internal citation omitted).

Plaintiff contends Defendant has instituted the investigation and now the formal complaint against her in bad faith and as a form of harassment for her exercising First Amendment rights.

Plaintiff relies upon one sentence contained in the written complaint to the JTC from Carl Gromek, Chief of Staff of the Michigan State Court Administrative Office, to support her argument that the investigation was begun in bad faith. The letter in pertinent part states: "As Judge Nettles-Nickerson drew a great deal of public attention to the race issue, I ask that you expedite your investigation to the extent possible." (Compl., Ex. 1 at 2). Plaintiff does not address nor acknowledge the fact that pursuant to the Michigan Court Rules, once a written complaint is filed with the JTC and such a complaint is not "clearly unfounded or frivolous, the commission shall direct an investigation be conducted to determine whether a complaint should be filed and a hearing held." Mich. Ct. R. 9.207(B) (emphasis added). Therefore, once the JTC determined the complaint was not frivolous, then it had no discretion as to whether or not to institute an investigation into the matter. This belies any claim of harassment or bad faith on the part of the JTC. Plaintiff also contends that the request for expeditious hearing indicates prejudicial conduct by the SCAO. The Court does not find that conclusion supportable by that request.

Plaintiff also appears to rely upon a May, 21, 2007 press release from the Michigan Department of Civil Rights that says in pertinent part,

> It is our sincere hope that the JTC did not intend to imply that Judge Nettles-Nickerson should be disciplined in any way for exercising her right to file a civil rights complaint if she believed that she was being subjected to illegal discrimination. A suspension for filing an allegation of illegal discrimination would

> violate state and federal civil rights laws designed to protect those who stand up against discrimination from any acts of retaliation. Such a message from a legal authority would have a chilling effect on the state's ability to protect persons who legitimately believe they may be victims of illegal discrimination. . . . .

(Press Release). However, as Defendant recognizes in his reply, a press release is cannot constitute evidence of bad faith or harassment especially when it expressly disavows that it has any "position on the veracity of any fact claimed by any party in this matter . . . ." (Press Release at 2).

Plaintiff further points to the fact a formal complaint was brought against her after she filed her federal claim as direct evidence of bad faith. However, the fact that after a 14 month investigation the JTC filed a complaint against her, which included nine other complaints not relating to her First Amendment claim, cannot be construed as constituting bad faith or harassment on the part of the JTC. Plaintiff has supplied nothing to the Court for it to find that such a determination was influenced by her filing of a federal complaint other than serendipitous timing.

In light of these facts, the Court finds that Plaintiff has failed to show any evidence which convinces the Court the investigation was instituted or the complaint filed in bad faith or to harass her. Therefore, as *Younger* abstention applies, and there is no applicable exception, the Court must abstain from this action.

### III. CONCLUSION

For all these reasons, the Court **GRANTS** Defendant's Motion to Dismiss and **DISMISSES WITH PREJUDICE** Plaintiff's Complaint.

**SO ORDERED**.

s/Paul D. Borman
                                    PAUL D. BORMAN
                                    UNITED STATES DISTRICT JUDGE

Dated: February 11, 2008

                        CERTIFICATE OF SERVICE

Copies of this Order were served on the attorneys of record by electronic means or U.S. Mail on February 11, 2008.


                                    s/Denise Goodine
                                    Case Manager